MARY E. STOLTZ *et al.*

*v.*

HENRY DOERING.

*Filed at Ottawa January 22, 1885.*

1. DESCENTS — *bastards—whether they may take by inheritance.* At common law a bastard has no right of inheritance, being regarded as *filius nullius;* and this rule is in force in this State. A bastard in this State can not inherit from its father unless he shall have married the mother, and acknowledged the child as his own, but the child may, under the statute, inherit from its mother.

2. SAME—*as to lands—by what laws the inheritance governed—conflict of laws.* The descent and heirship of real estate are exclusively governed by the laws of the country within which the property is actually situated. No person can take, except those who are recognized as legitimate heirs by the laws of that country, and they take in the proportions and the order which those laws prescribe. Although a bastard may be entitled in Germany, where born, to inherit from his father, he can not inherit real estate from him situate in this State.

3. MARRIAGE — *what constitutes marriage — at common law.* In the absence of any statutory prohibition, a marriage at common law may be had *per verba futuro cum copula;* but the *copula* must be in fulfillment of the agreement to marry, or in consummation of such a contract. The fact that sexual intercourse occurs after the agreement to marry at some future day, is not of itself sufficient to establish the marriage relation. To be availing, the parties, at the time of the *copula,* must then have accepted each other as husband and wife.

4. LIMITATION—*under acts of 1835 and 1839.* Under the Limitation law of 1835, seven years' possession of land by actual residence thereon is not of itself sufficient to create the bar. The occupant must also show a connected title, deducible of record, in connection with the possession.

5. Under the Limitation law of 1839, actual possession of land and payment of all taxes thereon for seven years successively, but without color of title, afford no defence to an action by the true owner.

APPEAL from the Circuit Court of DeKalb county; the Hon. C. W. UPTON, Judge, presiding.

Mr. HARRY RUBENS, and Mr. EDWARD ROBY, for the appellants:

A charge of illegitimacy must be supported by direct and irrefutable evidence. It must be conclusively proved. *Canjolle* v. *Ferrie,* 23 N. Y. 90.

No evidence of reputation in a community can be received to show illegitimacy. The evidence of a servant in the family as to reputation in the family is inadmissible. Reputation, if proved, can only be proved by a member of the family, or by proving the declarations and statements of blood relations. *Berkely Peerage case,* 4 Campb. 419; Hubback on Succession, 654-656; 1 Phillips on Evidence, (C., H. & E. notes,) 270, 273; 2 id. 279-281; 1 Greenleaf on Evidence, sec. 103, note 1.

The testimony denying the marriage of John Doering to the mother of defendant, is wholly inadmissible. 1 Greenleaf on Evidence, sec. 103, note 1; 1 Phillips on Evidence, (C., H. & E. notes,) 270–273; 2 id. 279–281; Hubback on Succession, 654–656; *Berkely Peerage case,* 4 Campb. 419; *Pier* v. *Pier,* 2 H. L. C. 354.

As to a marriage at common law, and the evidence tending to prove it, see *Hebblethwaite* v. *Hepworth,* 98 Ill. 132; *Port* v. *Port,* 70 id. 486; *Canjolle* v. *Ferrie,* 23 N. Y. 107; 2 Greenleaf on Evidence, sec. 462; 1 Bishop on Marriage and Divorce, secs. 13, 457, note, 1521.

The letters also show that every member of Doering's family recognized the defendant as a legitimate daughter, and they are evidence of that fact. 1 Greenleaf on Evidence, secs. 104–106; *Berkely Peerage case,* 4 Campb. 416.

The long continued adverse possession of the land by the husband, under claim of right, is a bar to the action. It is not necessary that any deed should pass, but only that there should be an adverse claim, which has a color of right or title for its support. *Chickering* v. *Failes,* 26 Ill. 507; *Griffin* v. *Marine Co.* 52 id. 145.

There was the actual residence thereon, and title deducible of record from the United States, sufficient under the statute of 1835. *Martin* v. *Judd,* 81 Ill. 488; *Jandon* v. *McDowell,* 56 id. 53.

Counsel also contended that as Mrs. Stoltz was made and treated as a legitimate heir of her father, and as such succeeded to his estate in Germany, she should also take as his heir here. *Ross* v. *Ross,* 129 Mass. 243; *Miller* v. *Miller,* 91 N. Y. 315; *Miller* v. *Williams,* 66 Ill. 91; *Keegan* v. *Geraghty,* 101 id. 26.

Mr. A. J. Hopkins, Mr. N. J. Aldrich, and Mr. F. H. Thatcher, for the appellee:

Foreign laws, when relied on, must be pleaded and proved. This is the only way they can be noticed. *Chumasero* v. *Gilbert,* 24 Ill. 294; *Chenot* v. *Lefevre,* 3 Gilm. 640; *Smith* v. *Whittaker,* 23 Ill. 367; *Palmer* v. *Marshall,* 60 id. 290.

Under the English law, illegitimate children can not take by descent, for they have not, in law, inheritable blood. 4 Kent's Com. 436; 1 Blackstone's Com. 458; *Blacklaws* v. *Milne,* 82 Ill. 505.

The law of descent is the subject of legislative control until the estate becomes vested by death. Cooley's Const. Lim. 359.

The descent and heirship of real estate are governed exclusively by the law of the country in which it is actually situate. Story on Conflict of Laws, secs. 483, 434, 448, 454, 430; Wharton on Conflict of Laws, sec. 296; *United States* v. *Crosby,* 7 Cranch, 115; *McCormack* v. *Sullivant,* 10 Wheat. 203; *Lingen* v. *Lingen,* 45 Ala. 412.

As to common law marriage, reference is made to Bishop on Marriage and Divorce, (6th ed.) sec. 262. That *copula* does not make them married, see *Peck* v. *Peck,* 12 R. I. 435; *Cheeney* v. *Arnold,* 15 N. Y. 345; *Duncan* v. *Duncan,* 10 Ohio St. 181; *Holmes* v. *Holmes,* 1 Abb. 525.

When marriage is inferred from cohabitation, the pre-. sumption may be destroyed by evidence of the subsequent and long continued separation of the parties. 2 Greenleaf on Evidence, sec. 464.

There is no bar shown under any statute of limitations, there is no color of title under the act of 1839, and there is no connected chain of title deducible of record under the act of 1835.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of ejectment, brought by Henry Doering, in the circuit court of DeKalb county, against Mary Elizabeth Stoltz, and Jacob Stoltz, her husband, to recover a certain tract of land in DeKalb county, which was owned originally by John Doering, who died intestate, seized of the land, in 1860. The cause was tried, by agreement, before the court, without a jury, and judgment was rendered in favor of the plaintiff, and defendants appealed.

Mary Elizabeth Stoltz, as appears from the evidence, was the daughter and only child of John Doering, who died seized of the land; but she was an illegitimate child, and upon this ground, plaintiff, who was a brother and next of kin of deceased, contends that the daughter can not inherit from the father, and that he, as sole heir of his brother, is entitled to recover. The plaintiff resides in Germany. The defendants were residing in this country at the time John Doering died, and upon his death they went into the possession of the land, and have remained in possession ever since, paying all taxes, and claiming to be the owners.

It appears from the evidence, that in 1831 John Doering, then a young unmarried man, resided in the province of Hesse Darmstadt, Germany; that he became acquainted with a girl residing at the same place, named Mary Webber. These parties became attached to each other, and were engaged to

be married, and in April, 1832, Mary Webber gave birth to a female child,—now Mary Elizabeth Stoltz, the defendant in this action. John Doering was the father of the child. He never, however, married Mary Webber, but, in 1834, left Germany and came to this country. He settled in DeKalb county, where, in 1845, he purchased the land in question. It is plain, from the evidence, that Doering always, after the birth of Mary Elizabeth, recognized and treated her as his daughter. In 1849 he had her brought to this country at his own expense, and introduced her to his friends and acquaintances as his child and daughter. Indeed, in the record of births and baptisms of the evangelical diocese of Meichs, in Germany, where Doering and Mary Webber resided, and where the child was born, John Doering acknowledged, in a public manner, in writing, over his own signature, that he was the father of the child.

The public acknowledgment of John Doering, in connection with the action taken in the parochial church by the mother and father of the child, it is contended, gave her the right of inheritance under the laws of the province in Germany where they resided, and as she became entitled to inherit there, she became the heir of John Doering, and as such entitled to inherit his property wherever situate. Conceding that the defendant, under the laws of the province in Germany where she was born and baptized, could inherit property situated in that province from John Doering, does that fact confer upon her the right of inheritance here?

At common law a bastard has no right of inheritance. In the eyes of the law, bastards are not regarded as children for civil purposes. Blackstone, (vol. 1, page 458,) in discussing the rights of bastards, says: "The rights are very few, being only such as he can acquire, for he can inherit nothing, being the son of nobody, and sometimes called *filius nullius,* sometimes *filius populi.*" In *Blacklaws* v. *Milne,* 82 Ill. 505, it was held that the common law rule which excluded illegiti-

mate children from inheriting, was in force in this State. Under our statute in force at the time of the death of John Doering, a bastard could not inherit from a father unless such father had married the mother of the child, and acknowledged the child as his own. Under section 65, chapter 109, Gross' Statutes of 1869, a bastard might inherit from the mother, but this statute confers no right of inheritance from the father.

The first question then to be determined is, whether the rights of the defendant, Mary Elizabeth Stoltz, are to be determined by the laws of the province of Germany, where she was born and baptized, or are those rights to be determined by the laws of this State, where the land involved is located. The general rule in regard to the descent of real estate is, that it is governed by the law of the country where it is located. Story on Conflict of Laws, states the law on this subject (sec. 483,) as follows: "The descent and heirship of real estate are exclusively governed by the law of the country within which it is actually situated. No person can take except those who are recognized as legitimate heirs by the laws of that country; and they take in the proportions and the order which those laws prescribe. This is the indisputable doctrine of the common law." The rule announced by Story we believe to be in harmony with the current of authority on the subject, as may be seen by an examination of some of the many cases bearing on the question. *Lingen v. Lingen,* 45 Ala. 412; *Barnum v. Barnum,* 42 Md. 251; *Smith v. Dorr,* 34 Pa. St. 126; *Harvey v. Ball,* 32 Ind. 99; Wharton on Conflict of Laws, secs. 560, 561, 273; *McCormack v. Sullivant,* 10 Wheat. 203; *City Ins. Co. of Providence v. Com. Bank of Bristol,* 68 Ill. 350; *Keegan v. Geraghty,* 101 id. 26.

If we are correct in our view of the law on this question, then, although the defendant may have been entitled to inherit from her father under the laws of Germany, where she was born, had he died leaving property in that country, it

does not follow that the defendant can inherit the property in this State, as real estate situated here must descend in conformity to the laws of our State, and not as provided by the laws in Germany,—a foreign country.

It is also claimed by counsel for appellants, that Mrs. Stoltz is the legitimate child of John Doering, from a common law marriage with Mary Webber *per verba de futuro cum copula.* There is no doubt from the evidence but Doering and Mary Webber had agreed, between themselves, that they would, at some future day, become husband and wife, and while this contract was in existence, sexual intercourse was had and the child begotten; but we do not understand that this constituted a common law marriage. It is true that no ceremony was required, but the parties must actually give themselves to each other in the marriage relation. An agreement to marry in the future is but an executory contract, and, as has been well said in *Cheeney* v. *Arnold*, 15 N. Y. 345, whatever indiscretions the parties may commit after making such promises, they do not become husband and wife until they have actually given themselves to each other in that relation. See, also, *Duncan* v. *Duncan*, 10 Ohio St. 181; 1 Bishop on Marriage and Divorce, (6th ed.) sec. 259; *Robertson* v. *State*, 42 Ala. 510; *Hebblethwaite* v. *Hepworth*, 98 Ill. 126; *Port* v. *Port*, 70 id. 484. In the absence of a statutory prohibition a marriage at common law may be had *per verba futuro cum copula*, but the *copula* must be in fulfillment of the agreement to marry, or in consummation of such a contract. The fact that sexual intercourse occurs after an agreement to marry at some future day, is not of itself sufficient to establish the marriage relation. To be availing, the parties, at the time of *copula*, must *then* accept each other as husband and wife. This was not done here.

The defendants also set up in bar of the action the Limitation law of 1835, which, in substance, requires an action of this character to be brought within seven years, where a per-

son is in possession by actual residence, having a connected title, in law or equity, deducible of record, from this State or the United States. The defendants were in the possession of the land for eleven years, by actual residence. Thus far they may claim the benefit of the statute. But they failed to show a connected title, deducible of record, in connection with possession, and hence they are in no position to claim the benefit of the statute. They also claim under the act of 1839, which bars an action brought to recover lands where the premises are in the possession of a person under claim and color of title, made in good faith, and who shall, for seven successive years, continue in possession, and pay all taxes assessed on the lands. The parties were in possession and paid the taxes for more than the required period to establish a bar under the statute; but the difficulty is, they were not in possession under claim and color of title. They were in possession under no title whatever. Had they been in under a deed, or writing of any description purporting to convey the title to the land, they might claim the protection of the statute; but such is not the case. Or, if Mrs. Stoltz had in law been entitled to an interest as an heir of John Doering, she might invoke the benefit of the statute; but she was not, and while in the possession of the land she occupied the same position that a person would who was in no manner related to Doering, if such a person had gone into the possession of the land after his death.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*