JOHN MANTERNACH *et al.*

*v.*

AUGUST T. STUDT *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 10, 1907.*

1. APPEALS AND ERRORS—*when defendant to partition bill has no right of appeal from decree dismissing bill.* A defendant to à bill for partition whose answer merely asserts that she is the owner of an undivided one-fourth of the premises and denies the allegation of the bill that she was not entitled to any interest therein, has not, in the absence of a cross-bill, a right of appeal from a decree dismissing the bill, since such decree does not adjudicate her rights.

2. PROCESS—*when service of summons on minor in proceeding to sell land is insufficient to confer jurisdiction.* Jurisdiction of the minor defendants to a petition by an administrator *de bonis non* for the sale of land to pay debts is not acquired by leaving a copy of the summons with their mother and explaining the contents thereof to her, where she was a creditor of the estate, and, in fact, the real party in interest, having resigned her office of administratrix in order that she might become a purchaser at the sale.

3. SAME—*when issue of second summons will not be presumed in aid of jurisdiction.* If a decree is entered at the return term of the summons and the summons and return show that the court was without jurisdiction, the findings of the decree reciting due service of process cannot be aided by the presumption that a second summons was issued, which may be indulged in to support the decree

where the decree is .entered at a term subsequent to the return term, and in such case the recitals in the decree cannot prevail over the summons and return.

4. DEEDS—*when minor child is not bound by mother's warranty deed.* A minor child is not bound by the warranties contained in a deed executed by his mother, who had purchased the land at the administrator's sale to pay debts of her husband's estate, where the child does not claim title through his mother but by descent from his father.

5. LIMITATIONS—*taxes must be paid by person holding title or connected therewith.* To make the period of seven years' payment of taxes under color of title obtained in good faith a bar under either section 6 or 7 of the Statute of Limitations, the taxes must be paid by the person holding the title or some person connected therewith; and if the husband pays taxes on land to which the wife holds color of title, the proof must show that he paid them as her agent or at her request.

6. SAME—*section 4 of the Limitation act requires possession by actual residence.* Section 4 of the Statute of Limitations, in favor of persons who "may be possessed of land by actual residence thereon for seven successive years," requires actual residence upon the land for the period prescribed, and mere possession without residence is not sufficient.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

John Manternach, one of appellants, began this suit by filing a bill in the superior court of Cook county for the partition of a certain lot described in the bill. The bill alleged that the complainant owned the undivided one-fourth of said lot; that he acquired title thereto by inheritance from his father, Peter Manternach, who died January 31, 1886, leaving Emma M. Manternach, his widow, and Lizzie, Annie, Mary and complainant as his children and only heirs-at-law. The bill averred Peter Manternach died intestate; that his widow was appointed administratrix of his estate February 15, 1886; that in March, 1887, she filed her account in the probate court, showing receipts of $895.95 and disbursements of $1294.65, leaving a balance due her of

$398.70; that January 30, 1889, she resigned her office of administratrix, and caused Alexander S. Maltman to apply for letters and be appointed administrator *de bonis non* February 6, 1889; that February 7, 1889, said Maltman filed his report and account of the personal estate of the intestate in the probate court, from which it appeared that the indebtedness of the estate, including the widow's award, amounted to $2525.50 and the personal property to $1770.65, leaving a deficit of $754.85; that February 8, 1889, said administrator *de bonis non* filed a petition in the probate court asking for an order and decree to sell the lot described in the bill for the payment of said deficit, and on that day a summons was issued on said petition, returnable on the third Monday of February, which was the first day of the next term of court succeeding the filing of the petition and the issuing of the writ. The return of the sheriff on the summons is dated the day of its issue, and recites that the writ was served on the complainant and Lizzie Manternach (now Sperk) "by leaving a copy thereof for each of them at the usual place of abode of said defendant with Emma M. Manternach, a member of their family of the age of ten years and upwards, and informing said Emma M. Manternach of the contents thereof." No question is involved as to the service on the other defendants.

On the 28th of February, 1889, a decree was entered by the probate court for the sale by the administrator *de bonis non* of the lot in controversy, and on May 1, 1889, said administrator, in pursuance of the decree, sold said lot to the widow, Emma M. Manternach, for $1800, which sale was afterwards approved by the probate court. Mrs. Manternach, who had previously been appointed guardian for her children, receipted the administrator for the amount due her and for $168.80 as guardian for her four minor children, which appears to have been the surplus from the proceeds of this sale after paying the indebtedness, costs and expenses. There is no proof in the record that Mrs. Manter-

nach, as guardian, ever accounted to complainant for his share of the money, or that he received any benefit from it except support and maintenance by his mother. April 22, 1893, Mrs. Manternach sold the lot to August T. Studt, who conveyed it to his wife March 17, 1898, and on March 17, 1906, Mrs. Studt and her husband conveyed the lot to John and Mary Nagl.

The bill avers, on information and belief, that Lizzie Sperk's right to assert title to an interest in said premises is barred by the Statute of Limitations; that complainant is the owner of the undivided one-fourth of said premises and John and Mary Nagl of the undivided three-fourths thereof, and that complainant is entitled to an account for the rents and profits of the premises accruing after the purchase by Studt from Mrs. Manternach, and prays that an account therefor may be taken and for partition of the premises.

August Studt, Sophia Studt, John Nagl and Mary Nagl filed their joint and several answers. The defenses set up by their said answers, as summarized by counsel for appellees in their brief and argument, are: First, the proceedings for the sale of the real estate were regular on their face and this proceeding is a collateral attack, and the recitals in the decree are binding upon John Manternach; second, he is bound by the warranty in the deed given by Emma Manternach, his mother, to August T. Studt; third, he is barred by section 9 of the Statute of Limitations; fourth, he is barred by sections 6, 7 and 8 of the Statute of Limitations; fifth, he is estopped by having received benefits from the sale.

Lizzie Sperk answered, admitting all the allegations of the bill except that she was barred by the Statute of Limitations from claiming and asserting a right to an interest in the real estate, and averred that she was the owner of the undivided one-fourth of said premises, and asked that the same be ascertained and set off to her, as well as a share of the rents and profits if the account be taken.

Upon a hearing in open court a decree was entered dismissing complainant's bill for want of equity, and from that decree John Manternach and Lizzie Sperk have prosecuted this appeal.

MASON & WYMAN, for appellants.

BULKLEY, GRAY & MORE, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

In our opinion Lizzie Sperk was not authorized to prosecute an appeal from the decree. The dismissal of the bill was not an adjudication of her rights in the premises. By her answer she merely asserted that she was the owner of the undivided one-fourth of the land sought to be partitioned and denied the allegations of the bill that she was not entitled to any interest therein. In the absence of a cross-bill, finding that the complainant had no interest in the premises and no right to a partition thereof would require that the bill be dismissed, and the decree to that effect was an adjudication, only, that the complainant had no interest in the premises but was not a determination of the right of Lizzie Sperk, and there was nothing, therefore, for her to appeal from. This appeal therefore brings before us for consideration nothing except the correctness of the decree of the superior court in adjudging that John Manternach (hereafter called appellant) had no interest in the real estate sought to be partitioned and dismissing his bill for want of equity.

The proof tends to show appellant had no knowledge that his father ever owned the lot in controversy until February, 1906, and the suit was instituted by him June 29, 1906. There is some controversy as to the age of appellant, but in our view of the case his exact age is immaterial. The proof shows him to have been either seven or eight years old at the time of the issuing and service of summons in the

proceeding by the administrator *de bonis non* for the sale of real estate to pay debts. Service of summons issued in a chancery proceeding against minor defendants by delivering a copy of the summons for the minor defendants to the complainant in the bill and informing such complainant of its contents does not give the court jurisdiction of the minors so served, and a decree rendered upon such service is void as to them. Cases so holding will be found collected in *Heppe* v. *Szczepanski*, 209 Ill. 88. The same rule applies to proceedings in the probate court for the sale of real estate to pay debts. It is true, Mrs. Manternach, mother of appellant, with whom copy of summons was left, was not complainant in the petition to sell the real estate, but the evidence shows she was the creditor for whose benefit it was sold, and that she resigned her office of administratrix and had an administrator *de bonis non* appointed so that she might become the purchaser at the sale, and while she was not the nominal complainant in the petition she was the real party interested and the one for whose benefit the proceeding was instituted.

The *Heppe case, supra*, is in its essential features very similar to the case at bar. In that case the widow of Frank Szczepanski was a creditor of his estate, and for the purpose of paying said indebtedness, and upon her request, the executor of her husband's estate procured a decree of the probate court to sell real estate. Rosalia and Marianna Szczepanski, only surviving children of said Frank Szczepanski and his widow, were minors, and the summons as to them was served by leaving a copy with their mother, who at that time was married to a man named Witt Obecny, and informing her of the contents thereof. A guardian *ad litem* was appointed for and answered the petition for the minors. At the sale, which occurred November 12, 1897, a brother of Mrs. Obecny was the highest bidder for the land, and it was struck off to and reported sold to him by the executor. Upon the approval of the report of sale the executor exe-

cuted a deed under date of November 18, 1897, tó the pur-
chaser, and on the same day the purchaser conveyed the
premises to his sister, Mrs. Obecny. In June, 1899, Rosalia
Szczepanski and Marianna Szczepanski filed their bill for
partition, and upon the question as to whether service was
had upon Rosalia and Marianna the court said (p. 105):
"In the case at bar, Katharina Obecny, acting in the name
of the executor, Kucharski, was the real complainant in this
petition for the sale of this property. * * * There was
no service upon her minor children except by leaving a copy
of the summons with her, the real, though not nominal,
complainant in the petition, and stating the contents of it
to her. We do not regard this service, under the decisions
referred to, and upon principle, as sufficient. Her interest
lay in the direction of keeping a knowledge of the filing of
the petition from the very children for whom she accepted
service. We are therefore of the opinion that the court ac-
quired no jurisdiction over these appellees to enter the order
of sale against their property."

But one summons appears to have been issued in the
present case, and it was served in the manner above set out.
That summons was made returnable to. the February term
of court, and at that term the decree for the sale was en-
tered. In *Hemmer* v. *Wolfer,* 124 Ill. 435, it was held that
where a decree in a chancery proceeding is entered at a term
subsequent to the return term and recites due service of pro-
cess upon the defendants but the return on the summons is
insufficient, the finding in the decree will be supported by
the presumption that a second summons was issued and
served for the term at which the decree is entered. But no
such presumption can be indulged where the decree was en-
tered at the return term of the summons, and in such case
the recitals in the decree cannot prevail if the summons and
return show the court was without jurisdiction. In *Forrest*
v. *Fey,* 218 Ill. 165, it was said (p. 170): "Where the rec-
ord itself shows that notice was not given as required by

law the jurisdiction does not attach, and where it shows
that the finding of jurisdiction upon which the court acted
was insufficient the finding of the court as to its jurisdiction
is not conclusive, and the recital of proper service on the
face of the decree makes no difference." Service of sum-
mons upon Mrs. Manternach, as guardian of complainant,
did not give the court jurisdiction to enter a decree to sell
his land. To have authorized a decree to that effect it was
necessary that process be served legally upon complainant.
(*Greenman* v. *Harvey*, 53 Ill. 386; *Bonnell* v. *Holt*, 89 id.
71.) Neither did the appointment of a guardian *ad litem*
for the appellant give the court jurisdiction of his person.
(*Campbell* v. *Campbell*, 63 Ill. 462; *Chambers* v. *Jones*, 72
id. 275.) It is very clear that the court did not have ju-
risdiction of the person of appellant and had no authority
to decree a sale of his interest in the land.

It is contended by appellees that even if the court had
no jurisdiction of the person of appellant in the proceeding
to sell real estate to pay debts, his mother having made ap-
pellee August Studt a warranty deed for the premises, her
warranty is binding upon her heirs "and an estoppel to their
recovery." This contention is unsound, for the reason that
appellant does not claim title as heir of his mother, but his
claim is that he derived title by descent from his father. In
such case he would be no more bound by the covenants of
warranty in a deed made by his mother than he would by
the covenants of warranty in a deed made by any other
stranger to the title.

Appellees also relied upon the seven years' Statute of
Limitations as one of their defenses, but the proof was in-
sufficient to establish such defense. At the time of the sale
of the premises by the administrator they were occupied by
a barn, but the barn was burned down some time (just when
the evidence does not show) before Mrs. Manternach sold
the lot to Studt, in April, 1893. Studt began the erection
of a building on the lot in March, 1897, and completed it

about the first of July following. He testified he rented the premises, and they had been occupied from the time of the completion of the building until the sale to the Nagls, in March, 1906. This covered a period of more than seven years prior to the filing of the bill, June 29, 1906. But the premises were not owned by Studt during all that time, for he conveyed them to his wife in March, 1898. Studt was absent from Chicago from January 1, 1898, to August 23, 1899. He testified that while he was at home he paid the taxes and while he was absent his wife paid them. All he knew about his wife paying the taxes during his absence, he said, was from what she told him and from the receipts. He testified he had turned over the tax receipts to Nagl, and none were introduced in evidence. Studt's testimony was all the evidence that was introduced on the subject of the payment of taxes. To make the period of seven years' payment of taxes under color of title obtained in good faith a bar under either section 6 or 7 of the Statute of Limitations, the taxes must be paid by the person holding the title or in some way interested in or connected therewith. (*Hurlbut* v. *Bradford,* 109 Ill. 397; *Timmons* v. *Kidwell,* 149 id. 507; *McCauley* v. *Mahon,* 174 id. 384.) The testimony of Studt is vague and uncertain as to how many of the years during which the premises were occupied after he received the conveyance from Mrs. Manternach he paid the taxes and how many of those years his wife paid them after he made the conveyance to her. If he paid the taxes at any time after making conveyance to his wife, he does not testify that he paid them for her as her agent or at her request. In *Timmons* v. *Kidwell, supra,* it was held that payment of taxes by the husband where color of title was in the wife, in the absence of proof that he paid them for his wife, was insufficient. In *Hurlbut* v. *Bradford, supra,* and *McCauley* v. *Mahon, supra,* it was held that proof that the taxes were paid for the whole period of seven years by or for the person holding or interested in the color of title must be clear

and convincing. There was no proof that the premises were vacant and unoccupied for any period of seven successive years. We hold, therefore, that the evidence was insufficient to sustain the defense under either section 6 or 7 of the Statute of Limitations.

Section 4 of the Statute of Limitations (Hurd's Stat. 1905, p. 1331,) is also relied upon by appellees. That section reads as follows: "Actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual residence thereon for seven successive years, having a connected title in law or equity, deducible of record, from this State or the United States, or from any public officer or other person authorized by the laws of this State to sell such land for the non-payment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution, or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken, as aforesaid; but when the possessor shall acquire such title after taking such possession, the limitation shall begin to run from the time of acquiring title." This section was enacted in 1835 and has been the subject of discussion in numerous cases in this court. Sections 6 and 7 of the Limitation act were enacted subsequent to section 4, to meet a class of cases to which that section was not applicable. Section 4 requires that a person claiming under it must have been "possessed by actual residence thereon for seven successive years." Mere possession under section 6 is sufficient, but section 4 requires the possession to be by actual residence, and this has been the construction given this section of the statute in *Stoltz* v. *Doering,* 112 Ill. 234, *Heacock* v. *Lubuke,* 107 id. 396, *Elston* v. *Kennicott,* 46 id. 187, *Woodward* v. *Blanchard,* 16 id. 424, and *Collins* v. *Smith,* 18 id. 160. There is no proof whatever that the premises had been possessed by any one "by actual residence thereon for seven successive years" or any other period, and we are

of opinion, therefore, appellees failed to establish title under section 4 of the Statute of Limitations.

It is also urged that the appellant received benefits from the proceeds of the sale of the real estate and is therefore estopped from attacking appellees' title and asserting title in himself. The proof shows that his mother, as his guardian, received $42.50 for him out of the proceeds of the sale. We do not agree to the correctness of this proposition, but as appellant has by an amendment to his bill tendered the money back to whomever the court should decide was entitled to it, we deem it unnecessary to discuss this question.

We are of opinion the court erred in dismissing the appellant's bill, and the decree is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.	*Reversed and remanded.*