(No. 35892.—

VERLIE O. JAMES *et al.*, Appellees, *vs.* FLORENCE FRANTZ *et al.*, Appellants.

*Opinion filed Feb. 15, 1961.—Rehearing denied March 27, 1961.*

CONGER & ELLIOTT, of Carmi, for appellants.

CRAIG & CRAIG, of Mt. Vernon, for appellees.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

This controversy involves the validity of two decrees which reformed a deed, and the right of the plaintiffs to attack them at this time. One of the decrees was entered in 1906 and the other in 1920. The trial court held that both decrees were void, and the defendants who relied upon them have appealed to this court. A freehold is involved.

In 1902, John S. Cochran and Sarah E. Cochran, his wife, conveyed land in Saline County to their minor daughter, Verlie O. Cochran "and the heirs of her body." By statute this conveyance created a life estate in Verlie with a remainder in fee to her bodily heirs. (Ill. Rev. Stat. 1959, chap. 30, par. 5.) A few months after the deed was delivered, John S. Cochran died.

The deed was recorded in March of 1905, and thereafter Chauncey S. Cochran, the brother of Verlie and the only other child of John S. and Sarah E. Cochran, brought suit in the circuit court of White County to reform the deed. A decree was entered on May 14, 1906, which found that because of an error of the scrivener the deed did not express the intention of the grantors. The decree directed the master in chancery to execute and deliver a deed which would convey the surface of the land to Verlie O. Cochran and her bodily heirs, but would convey the mineral rights in fee to Chauncey S. and Verlie O. Cochran as tenants in

common. The master executed such a deed, and it was recorded in Saline County.

In 1920 Chauncey S. Cochran brought another suit, this time in the circuit court of Saline County, to reform the 1902 deed. The bill in this case alleged the mistake of the scrivener and the 1906 reformation, and also alleged that the 1906 decree was improper in that it ordered the execution of a new deed instead of the correction of the original deed. A decree was entered which reformed the deed to accomplish the same result, so far as the present parties are concerned, as the 1906 decree.

Verlie O. Cochran married Charles H. James. In February of 1959 she, together with her husband and her three surviving sons, Howard C., Harold R. and Charles F. James, instituted the present action. A fourth child had died in 1921. Verlie O. James died intestate during the pendency of this action, and her husband has conveyed his interest in the property to his sons, who are the present appellees. Chauncey S. Cochran died "in the 1930s," and the defendants are Florence Cochran and Florence (Cochran) Frantz, his widow and daughter who are also his heirs and devisees.

Both in the trial court and in this court the plaintiffs have attacked the validity of the 1906 and 1920 decrees on the ground that the courts which entered them were without jurisdiction over the interests of the bodily heirs of Verlie. The defendants have maintained the validity of the decrees and in addition have urged that the claim of the plaintiffs is barred by lapse of time. The trial court found for the plaintiffs and decreed that the fee simple title to all of the land involved is vested in the three surviving children of Verlie James in equal one-third interests.

To dispose of the case we find it unnecessary to consider the validity of the 1906 decree, and we express no opinion with respect to it. The defendants in the 1920 action were Verlie, her mother and her sons. She and her mother were

personally served with process. Her sons, who then ranged in age from eight to eleven years, were served in accordance with the applicable statute (Smith-Hurd Stat. 1919, chap. 22, par. 11,) which provided for service of summons by leaving a copy at the defendant's abode with "some person of the family, of the age of ten years or upwards." Summons was left with their mother, Verlie. It does not affirmatively appear that she ever delivered the summons to them and they deny all recollection of the litigation.

A guardian *ad litem* was appointed to represent their interests and the cause was referred to a master in chancery who heard evidence and filed his report and recommendations. The decree found that the court had jurisdiction of the subject matter and of the persons of the defendants. It also found, in accordance with the master's report, that by reason of an error of the scrivener the deed did not express the intention of the grantors, and ordered it reformed.

The decree which reformed the deed did not disturb its effect with respect to the surface of the land. But under the deed as reformed, the mineral estate was severed from the surface, the interests of the heirs of the body of Verlie in the mineral rights were eliminated, and instead of receiving a life interest in all of the mineral rights, she received a fee interest in half of the mineral rights as a tenant in common with her brother, Chauncey. The appellees argue that the court did not obtain jurisdiction over them because the interest of their mother was adverse to their interest so that service upon her was not binding upon them.

In support of this proposition they rely upon *Heppe* v. *Szczepanski,* 209 Ill. 88; *Manternach* v. *Studt,* 230 Ill. 356, and *Sharp* v. *Sharp,* 333 Ill. 267. The first two of these cases involved sales of real estate to pay debts. In each case service was made upon the child by leaving a copy of the summons with the mother. In each case, however, the mother was the principal creditor and the "real party in interest" in bringing about the sale of the property which

adversely affected the interests of the children. The *Sharp case* more closely resembles the present one. There the grantor had conveyed to his son for life, remainder in fee simple to the bodily heirs of the son. The grantor then brought an action to reform the deed to convey fee simple title to the son. Summons was served upon the grantee's children by leaving a copy with their father. The court held, "The summons in the cause having been served upon the appellee by leaving a copy thereof with his father, whose interest in the suit was diametrically opposed to that of the appellee, the service was void and the court did not obtain jurisdiction of the person of the appellee, and the decree in question was therefore void as to him." 333 Ill. at 278.

The appellees in the present case urge us to extend the doctrine of those cases to apply to the 1920 decree. In the present case, however, Verlie James was not the moving party, nor was her interest diametrically opposed to the interest of her children. In each of the cases relied upon by the appellees the party upon whom the summons directed to the minor children was served, unmistakably stood to gain by a decree in favor of the plaintiff. It is by no means clear that this is so here. Indeed the appellees concede that it is "problematical" whether a life estate in all of the minerals under the land was worth more than a one-half interest in the fee. The record in this case is consistent with the possibility that it was Chauncey S. Cochran, and not Verlie, who gained from the appellees' loss.

We need not speculate, however, whether Verlie O. James gained or lost by the 1920 decree, for we think that even if service of process upon the appellees was defective, the attack upon the decrees is barred by *laches*. Many factors combine to lead us to this conclusion. It was stipulated that shortly after the 1920 decree the appellees learned that their mother, Verlie, and their uncle, Chauncey Cochran, had sold the coal under the land involved in this case. The appellees received no part of the proceeds. In 1934 the ap-

pellees executed a mortgage which covered the surface of the land but expressly excluded the mineral rights. The youngest of the appellees had become of age by 1933. Their interest in the surface of the land could have come only by the 1902 deed, and an examination of that deed would have shown that by its terms they had a remainder in the mineral rights as well. The 1920 decree reforming the deed was in the chain of title. In 1941 one of the appellees heard his mother discuss the making of an oil and gas lease. Since 1941, oil and gas leases were executed by the Cochrans, as well as by Verlie O. James and her husband, and since August of 1955 two of the appellees have been receiving an overriding royalty from the Cochran leases.

We have recently pointed out that "there is no class of property in which *laches* is more relentlessly enforced" than with respect to oil and mining property. (*Pyle* v. *Ferrell,* 12 Ill.2d 547.) In the present case the appellees' action was not commenced until the persons who had knowledge of the original transaction, and upon whose testimony the decrees reforming the deed were based, were dead. If the present attack were permitted, the defendants might be vulnerable to claims by way of accounting running over many years, but they are helpless to sustain the decrees which reformed the deed 55 and 39 years before this action was instituted. What was said in *Forster* v. *Brown Hoisting Machinery Co.* 266 Ill. 287, 298, is relevant here. "Whether the mere neglect of appellant to assert his claim with more diligence, in the absence of any circumstance arising which would prejudice appellee, would constitute *laches* need not be determined. Here the delay must be considered in conjunction with another circumstance,—the death of Brown, —which would seriously prejudice the appellee in defending against appellant's claim." See also *Pyle* v. *Ferrell,* 12 Ill.2d 547, 555; *Spies* v. *DeMayo,* 396 Ill. 255, 272.

The appellees have stipulated that they were advised of their possible interest in the minerals in April or May

of 1955. At that time they commenced negotiations with the defendants, but this action was not commenced until February of 1959. Even if it be assumed that the appellees had neither actual knowledge nor constructive notice of the interest they now assert until April or May of 1955, it is nevertheless true that "when a long period has already elapsed before the facts are discovered, promptness in bringing suit is more important than if the facts had been discovered immediately." Restatement of Judgments, § 129, comment e.

The appellees attempt to meet the charge of *laches* by asserting that a void decree may be attacked collaterally at any time, without regard to *laches*. They rely upon the statements in *Thayer* v. *Village of Downers Grove,* 369 Ill. 334, 339, and *Ward* v. *Sampson,* 395 Ill. 353, that "a void judgment or order may be vacated at any time and the doctrines of *laches* and estoppel do not apply." These statements are far too sweeping, however, for *laches* is a familiar defense when the validity of an earlier judgment or decree has been attacked in equity. (See *Wright* v. *Simpson,* 200 Ill. 56, 65; *Elieff* v. *Lincoln National Life Insurance Co.* 369 Ill. 408; *Koberlein* v. *First National Bank of St. Elmo,* 376 Ill. 450; Freeman on Judgments, 5th ed., sec. 1192.) As the black letter of the Restatement puts it, "Equitable relief from a judgment may be refused to a party thereto if * * * after ascertaining the facts the complainant failed promptly to seek redress." (Restatement of Judgments, § 129.) No different principles are involved because the complaint in this case concluded with a prayer for a declaratory judgment instead of a prayer for equitable relief.

It follows that the judgment must be reversed and the cause remanded with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*