*In re* STACEY MILLER, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES MILLER, Defendant-Appellant.)

Third District   No. 79-927

Opinion filed May 21, 1980.

Ronald D. Stombaugh, of Love, Beal, Pratt & Stombaugh, of Monmouth, for appellant.

Fred R. Odendahl, State's Attorney, of Monmouth (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Charles and Becky Miller are the parents of Stacey Miller, a minor. At the time of the divorce of her parents, custody of Stacey was awarded to her mother, who moved to Illinois in 1974.

Becky, while residing in Alexis, Illinois, relinquished custody of Stacey to Mr. and Mrs. Jerome Shupe of Galesburg, Illinois, Becky's parents, on December 15, 1975. Subsequently, a petition for adjudication of wardship and appointment of guardian was filed by Jerome Shupe. In that petition, the address of Charles Miller was listed as unknown. Summonses for service were issued on Becky and Stacey and were served on them on January 15, 1976. However, no summons was issued to Charles Miller. Instead, an affidavit for service by publication was filed on January 2, 1976. Said affidavit gave no last known address and stated that the whereabouts of Charles Miller were unknown. Therefore, no notice of the proceeding was mailed, but notice by publication was duly given in the Monmouth Review Atlas, a newspaper of general circulation in Warren County, Illinois. Jerome N. Shupe was appointed guardian by order of the court on January 29, 1976. On December 13, 1978, Charles filed a petition to vacate this order of January 29, 1976, alleging that the affidavit was defective and that the court lacked jurisdiction to adjudicate his interests as the father.

At the hearing on the motion to vacate, Charles testified that when he and Becky were separated, in February of 1974, they were living at 226 E. Robard, in Brookfield, Missouri, and had lived there for approximately 1½ years. Furthermore, they had lived in Brookfield since their marriage in 1970. He testified that Brookfield has a population of about 5,500. Both of their families were from Brookfield, and both Charles and Becky had lived in and around Brookfield all of their lives. Becky's parents, Jerome and Betty Shupe, had lived in Brookfield until sometime in 1973. After the separation from Becky, Charles moved to the house of his parents, Mr. & Mrs. Norman Miller, Rural Route, Purdin, Missouri, and lived there continuously until December of 1977. His parents' house is in Lynn County, Missouri, the same county in which Brookfield is located, and about 11½ miles from Brookfield. In addition, from August of 1970 through March of 1979, and at all times relevant to these proceedings, Charles Miller was employed at Brown Shoe Company in Brookfield, Missouri.

Charles also testified that Jerome and Betty Shupe knew his parents and where they lived and had picked up the children at his parents' house in the summer of 1975. They also knew he was living there at that time.

Charles testified that the Shupes knew he worked at Brown Shoe Company and that Mrs. Mordecai, who is Betty Shupe's mother, worked there also and that he saw her on a daily basis at work.

Charles Miller further testified that he had periodic phone conversations with Becky Miller at his parents' residence during the period in question, although he did not remember the specific dates of such conversations. Several months after January 29, 1976, sometime in the summer of 1977, Becky informed him that she had turned custody over to her parents, but she did not elaborate, and he did not see how anything could be done without his knowledge or consent. He testified that he never had actual knowledge of a guardianship proceeding or any legal proceeding involving Stacey until November 13, 1979, when he was served with papers in an adoption proceeding. He further testified under cross-examination that he had contributed no support to the Shupes on behalf of Stacey.

Jerome Shupe testified that Stacey came to live with him and his wife at the request of their daughter, Becky, on or about December 15, 1975. He also testified that he knew that Charles was living in and around Brookfield and that Becky had contacted Charles Miller at his parents' residence prior to that date. He further testified that he knew the parents of Charles Miller and knew the location of their residence. He also testified that he had picked Stacey up at the home of Charles Miller's parents in the summer of 1975 after Charles had exercised visitation rights. Jerome Shupe testified that he did not locate Charles Miller for the reason that his daughter had tried to contact Charles Miller, and Charles Miller could not be reached. He testified that his basis for stating that Charles Miller's address was unknown was that Becky told him that she was unable to reach Charles at his parents' home, and further that the parents of Charles Miller had told Becky that they did not know the whereabouts of Charles Miller. He testified that he relied completely upon what his daughter had told him. He further testified that he and his wife had provided the complete support for Stacey since they were appointed guardians, and further that Charles Miller had visited Stacey and talked to her on the phone upon several occasions after he was appointed. He further testified that he had always assumed that Charles Miller had no objections to the court order.

Becky Miller testified that she had made an effort to contact Charles by phone on two occasions in December of 1975 when she was having some medical difficulties with Stacey. She testified that she called his parents' house and that his mother stated that Charles was not there and that she did not know where he was at the present time, but that she would give him a message to call back. She testified that Charles did not return the call.

Becky testified that she turned Stacey over to her parents, Jerome

and Betty Shupe, on December 15, 1976. Sometime during February or March 1977, a few months after the guardianship proceeding was completed, she informed Charles Miller that her parents had been appointed guardians of Stacey by the court.

After hearing the evidence presented, the trial court found that the notice by publication was defective but that the defendant had not timely filed his petition to vacate. From this determination, the defendant, Charles Miller, appeals.

■■ The defendant argues that the defective notice rendered the proceeding in the trial court void and, since a void judgment may be attacked at any time, the trial court's ruling on his petition to vacate was, therefore, erroneous. Although a parent who is a party to a proceeding to have a child declared a dependent minor has certain procedural rights (Ill. Rev. Stat. 1977, ch. 37, par. 701—20), and although notice by publication does not suffice for due process purposes where an individual's name and address is known or is easily ascertainable (*Robinson v. Hanrahan* (1972), 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30), if that parent has actual knowledge of the facts and fails to promptly seek redress, the doctrine of laches will bar an attack upon the decree. (*Rodriguez v. Koschny* (1978), 57 Ill. App. 3d 355, 373 N.E.2d 47.) Actual knowledge of specific facts relating to the prior procedure is not essential as long as there is knowledge of circumstances which would lead a reasonable person to make an inquiry. *Rodriguez v. Koschny* (1978), 57 Ill. App. 3d 355, 373 N.E.2d 47.

While the defendant testified that he had no actual notice of any legal proceeding involving Stacey until November 13, 1979, Becky did advise him sometime in the spring of 1976 or summer of 1977 that she turned custody over to her parents. The trial court, who heard and saw the witnesses (including the parents of Stacey), found that petitioner had knowledge of the proceedings in March of 1976 and at various times thereafter, but that petitioner did nothing to assert his rights with respect to the proceeding in which grandfather Jerome Shupe was appointed guardian and custodian of Stacey Miller, a minor, in the order dated January 29, 1976. The trial court found lack of diligence on the part of the petitioner and that the petition was not timely filed. The court ordered that the petition be denied.

It is noted that not until December 13, 1978, was the motion made by petitioner to vacate the order of January 29, 1976. In the interim, the Shupes had taken full responsibility of caring for, feeding, clothing and sheltering Stacey.

■■ The trial court determined that the evidence established facts which would lead a reasonable person to inquire concerning the authority of the

Shupes to have custody. On the basis of the record, therefore, the court stated that in view of the failure of defendant to assert his rights, of which the court found he had knowledge, and in view of the lapse of time, the petition of defendant-appellant Charles Miller was denied. On the basis of the record, where there are disputed questions of fact, a determination by the trial court will not be set aside unless it is contrary to the manifest weight of the evidence. On the record before us, the determination of the trial court is not contrary to the manifest weight of the evidence in the cause.

For the reasons stated, therefore, the order of the Circuit Court of Warren County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.