*In re* ADOPTION OF TASHYNA NICOLE MILLER, a Minor.—(OSIE PERNELL *et al.*, Appellees, *v.* KEVIN J. MILLER, Appellant.)

First District (2nd Division)    No. 81-245

Opinion filed May 18, 1982.

William R. Jacobs, II, of Chicago (Jerome Marvin Kaplan, of counsel), for appellant.

Les Dombai, of Legal Aid Bureau, of Chicago, for appellees.

JUSTICE PERLIN delivered the opinion of the court:

Appellant, Kevin J. Miller (Miller), the natural father of a minor child, Tashyna Nicole Miller, filed a petition to vacate a judgment of adoption entered in favor of appellees, Francene Pernell, the child's natural mother, and Osie Pernell, Jr., Francene's second husband (the Pernells). Miller's petition alleged that service of process was defective because his last known address listed in the affidavit for service by publication was incorrect. The trial court found that service was defective but sustained the Pernells' motion to dismiss and denied Miller's petition based upon its determination that Miller had not shown due diligence in attacking the judgment of adoption. Miller was granted leave to file a late notice of appeal.

On appeal Miller contends that the trial court erred in dismissing his petition on the ground that he had failed to exercise due diligence. For the reasons hereinafter stated, we affirm the order of the trial court.

On October 31, 1977, appellees, Osie Pernell, Jr., and Francene Pernell, husband and wife, filed a petition to adopt Tashyna Nicole Miller, the daughter of Francene Pernell and her former husband, appellant Kevin Miller. The petition alleged that Miller was an unfit person on grounds of abandonment, desertion and failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare. The petition also alleged that Miller's whereabouts were unknown to the Pernells. Service of process on Miller was by publication. On November 3, 1977, Francene Pernell's affidavit for service by publica-

tion was filed. The affidavit stated that on due inquiry Miller could not be found so that process could not be served on him and gave his place of residence as 515 East 64th Street, Chicago, Illinois.

On November 14, 1977, the clerk of the circuit court filed a certificate of mailing which stated that a copy of the adoption publication notice had been mailed to Miller at 515 East 64th Street, Chicago, Illinois. On November 18, 1977, the post office returned the notice to the clerk with the notations "NSN" and "No such number." On November 22, 1977, the Law Bulletin Publishing Company filed its certificate of publication. On December 8, 1977, an order of default was entered against Miller and his parental rights were terminated. On the same date a judgment for adoption was entered for the Pernells.

On November 22, 1978, almost one year after the judgment for adoption was entered, Miller appeared in the circuit court, divorce division, on an emergency motion for visitation with Tashyna. He was represented by the same attorney who represented him in the proceedings below. The Pernells appeared *pro se* and presented the court with a copy of the judgment for adoption. Miller and his counsel were also handed a copy of the judgment and were advised by the court that, in view of the adoption, Miller had no right to visitation.

On August 15, 1980, approximately 21 months after Miller and his counsel learned of the adoption judgment, Miller filed a petition for leave to examine the file in the adoption case, alleging that as Tashyna's father he was not served with summons at his then residence of 3810 Tidewater, Houston, Texas, that he did not receive a notice of publication and that he had no independent knowledge of the adoption proceedings. The petition asked that his attorney be allowed to examine the file to discover what effort had been made to serve Miller and to ascertain the address to which the summons had been sent. The petition requested that a hearing be held to determine the validity of service and that the judgment for adoption be vacated and the matter be set down for trial on the merits of the petition for adoption in the event that the court found that proper service was not had. On September 14, 1980, Miller's attorney was granted leave to examine the court file in the adoption judgment.

On November 18, 1980, the Pernells filed a motion to dismiss Miller's petition to vacate the adoption judgment. Their motion stated that Miller's petition was legally insufficient in that Miller alleged no facts which would indicate that the Pernells knew his whereabouts while the petition for adoption was pending and that Miller had thus failed to show that service of notice of the adoption petition by publication was improper. The Pernells' motion asserted that even if service by publication had been defective in some respect, Miller's petition should be dismissed on grounds of *laches* in that Miller and his attorney were

informed of the adoption judgment in open court on November 22, 1978, yet did not file a petition to vacate that judgment until almost 21 months later. Finally, the motion to dismiss claimed that allowing Miller's petition to proceed would cause great prejudice not only to Osie and Francene Pernell but also to Tashyna in that she has lived with them in a family unit since 1975, when she was one year old, and that Miller had not seen or communicated with her since January 1975. An affidavit of Francene Pernell was submitted in support of the motion to dismiss. Pernell averred that she did not know the whereabouts of Kevin Miller prior to, during or subsequent to the time the adoption took place. She stated further that the last address she had for Miller was that of his mother who resided at 328 West 60th Place, Chicago, Illinois, which is the address she stated that she furnished to her then attorney, James Seaberry. The affidavit did not explain why Pernell's affidavit for service of publication listed Miller's address at 515 East 64th Street.

On December 2, 1980, Kevin Miller filed a petition to vacate the judgment of adoption. The petition recited that he and Francene Pernell were divorced on July 26, 1974, that Francene was awarded custody of their child, Tashyna, that he was given reasonable visitation rights and that the summons in the divorce action had been issued to Kevin Miller, 328 West 60th Place, Chicago, Illinois, c/o Loretta Miller, his mother. Noting that Francene Pernell's affidavit for publication filed with the petition to adopt gave his last known address as 515 East 64th Street, Chicago, Illinois, Miller's petition stated that at the time Francene Pernell's affidavit was filed he lived at 3810 Tidewater, Houston, Texas. The petition stated further that there is no such address as 515 East 64th Street, Chicago, Illinois and alleged that at the time the adoption petition was filed Francene Pernell knew where respondent resided and that "he [Miller] cannot explain why she gave her then attorney wrong information, unless it was to keep him, the natural father, from learning of the intended adoption." Finally, the petition represented that Miller did not discover until November 22, 1978, that a judgment for adoption had been entered and that Miller consulted an attorney to challenge the judgment but he was not financially able to proceed further at that time.

On December 10, 1980, Miller was granted leave to amend the caption of his petition to vacate, to designate it as a petition for relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72). On the same day a hearing was held before the trial court on Miller's petition and on the Pernells' motion to dismiss. Kevin Miller was not present but was represented by his attorney, who answered ready on the motion to dismiss.

During oral argument before the trial court, counsel for the Pernells conceded that Francene Pernell's affidavit for service of publication gave

a different last known address for Kevin Miller than she gave her attorney, and counsel stipulated that the address in the publication does not exist. Counsel for Kevin Miller acknowledged that both he and his client had actual knowledge of the judgment for adoption in November 1978. Miller did not attempt to vacate or attack the judgment at that time because, according to his attorney, he "happens to be a traveling man. This is his work. He didn't have the money to start right away and it was inconvenient and one thing or another." No oral testimony was taken.

The trial court found that the concededly defective service was obviated by the fact that Miller did have actual knowledge of the adoption judgment within a year of its entry, at which time he could have attacked the judgment if he so chose. Instead, "he waited some 21 months, * * *." The court held that in a section 72 petition it is "incumbent upon any such petitioner to illustrate diligence," particularly in a case such as this where "the paramount interest of the child * * * requires that these matters be determined at the earliest possible time and not be delayed." The court found that Miller had not shown due diligence:

> "It is my determination that such diligence in such an important matter as your child and the child you profess to want and to assert your rights over was not demonstrated here. It's my feeling that such an important interest is not a passing fancy, not something that should occur to a parent almost as an afterthought or wait until circumstances become absolutely ripe or most propitious. It's something that must be attended to immediately; not just for your own concern, but for the concerns of that child."

For these reasons the court granted the Pernells' motion to dismiss and denied Miller's petition for relief, from which order Miller appeals.

Miller contends that the judgment for adoption is void *ab initio* because service by publication was defective. Since, according to Miller, a void judgment may be attacked at any time, his petition to vacate the adoption judgment did not have to demonstrate the due diligence required of petitions challenging voidable judgments. In the alternative, Miller contends that his failure to file his petition to vacate the adoption judgment for 21 months after he learned of its entry was "satisfactorily explained by his allegation that he lacked funds to engage counsel." The Pernells respond that the judgment for adoption was merely voidable and that Miller, therefore, was obligated to show due diligence in challenging it. They claim that Miller's petition failed to make this showing. The Pernells respond further that regardless of the characterization of the judgment as void or voidable, Miller's petition to vacate was barred by *laches*.

■■ Under our system of civil procedure, proper service of summons is a necessary element to obtaining jurisdiction over a party. (*Home State*

*Savings Association v. Powell* (1979), 73 Ill. App. 3d 915, 917, 392 N.E.2d 598.) Thus, any judgment rendered under circumstances where this jurisdictional standard has not been fully followed is void *ab initio* for lack of jurisdiction over the defendant. (*Home State Savings Association v. Powell* (1979), 73 Ill. App. 3d 915, 917.) Section 72(6) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72(6)) expressly provides that relief from a void judgment is not limited by the provisions of section 72. A motion to vacate for want of proper service is not a petition under section 72 after valid service (*Mason v. Freeman National Printing Equipment Co.* (1977), 51 Ill. App. 3d 581, 585, 366 N.E.2d 1015) and a party raising the issue of lack of jurisdiction is not subject to the strictures of either the time limitations or the requirement of due diligence to which petitions relying on section 72 must conform (*Home State Savings Association v. Powell* (1979), 73 Ill. App. 3d 915, 917). Nor is he obligated to plead a meritorious defense. (*Mason v. Freeman National Printing Equipment Co.* (1977), 51 Ill. App. 3d 581, 585.)[1] Nevertheless, while the strictures of section 72 do not apply, the equitable defense of *laches* may be interposed to an attack on a void judgment. (*James v. Frantz* (1961), 21 Ill. 2d 377, 383, 172 N.E.2d 795; *Miller v. Bloomberg* (1978), 60 Ill. App. 3d 362, 365, 376 N.E.2d 748.) Since we find that Miller's petition was barred by *laches*, it is unnecessary to determine whether the adoption judgment was void or merely voidable.

■■ *Laches* has been defined as "such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552, 147 N.E.2d 341.) The existence of *laches* "depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552.) The *laches* doctrine may be invoked to preclude the assertion of parental rights. (*In re Miller* (1980), 84 Ill. App. 3d 199, 202, 405 N.E.2d 25; *Rodriguez v. Koschny* (1978), 57 Ill. App. 3d 355, 360-62, 373 N.E.2d 47.) The justification for applying the *laches* doctrine to adoption judgments is that:

> " 'The adoption decree is *sui generis* because it closely concerns the life of someone other than the contending parties, the child. A rule that an individual's right to set aside a judgment entered

---

[1] Although Miller designated his petition as a petition for relief under section 72 of the Civil Practice Act, "we are not precluded from noticing that the petition alleges matters which question whether the court had jurisdiction." (*Home State Savings Association v. Powell* (1979), 73 Ill. App. 3d 915, 917.) A petition challenging a judgment as void need not meet the requirements of section 72, even if the party filing the petition deems it to be a petition under that section. *First Federal Savings & Loan Association v. Brown* (1979), 74 Ill. App. 3d 901, 905, 393 N.E.2d 574; *Rickard v. Pozdal* (1975), 31 Ill. App. 3d 542, 545, 334 N.E.2d 288.

without jurisdiction over him cannot be cut off by lapse of time (assuming there is such a rule) does not and should not apply to the case where interests exist superior to those of the party whose rights are terminated.' " H. Clark, Domestic Relations sec. 18.10, at 667 (1968), cited with approval in *Rodriguez v. Koschny* (1978), 57 Ill. App. 3d 355, 361, 373 N.E.2d 47.

While the trial court did not explicitly base its dismissal of Miller's petition on the ground of *laches*, the court did take into account facts on which a finding of *laches* could have been made. In any event we are not limited or confined to the precise reasons given by the trial court in entering its order and may consider the Pernells' claim that Miller's petition to vacate was barred by *laches. Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 701, 371 N.E.2d 260.

To assert the defense of *laches* a party must show both that there was unreasonable delay in bringing the action and that the delay materially prejudiced him. (*Murphy v. Rochford*; *Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill. 2d 325, 330, 291 N.E.2d 641.) We consider first the element of delay.

It is undisputed that on November 22, 1978, both Miller and his counsel were expressly told that a judgment for adoption had been entered 11 months earlier. Despite this knowledge Miller waited almost 21 months to file a petition attacking that judgment. In attempting to explain why Miller had waited so long, his counsel advised the trial court that Miller "happens to be a traveling man. This is his work. He didn't have the money to start right away and it was inconvenient and one thing or another." We do not believe this satisfactorily explains a delay of almost two years in instituting these proceedings. A similar justification for delay in filing an attack on an adoption judgment was rejected in *In re Adoption of Rayborn* (1975), 32 Ill. App. 3d 913, 337 N.E.2d 296.

In *In re Adoption of Rayborn*, the natural father filed a section 72 petition to vacate an adoption more than two years after the judgment had been entered. The father alleged that he had been fraudulently induced to sign a consent, that the adopting father had concealed his criminal record and that he (the natural father) had been under a legal disability because he had been on medication. With respect to the last allegation the court stated that "[h]e [the natural father] was neither mentally incompetent nor under age during that period; the fact that he may have been ill, unemployed and without funds to retain counsel cannot, under the circumstances, constitute legal disability or duress." *In re Adoption of Rayborn* (1975), 32 Ill. App. 3d 913, 915.

The record shows that Miller had counsel and was employed at the time he learned of the adoption judgment. Neither Miller nor his counsel ever represented to the court that he had sought and had been denied

legal aid. Miller, however, contends that the trial court erred in proceeding on the Pernells' motion to dismiss in Miller's absence, in not holding an evidentiary hearing on the motion and in not permitting his counsel a continuance for the purpose of obtaining an affidavit from Miller setting forth his reasons for not attacking the judgment sooner. We must reject these contentions.

Examination of the record reveals that on October 27, 1980 the trial court set a status hearing for November 10, 1980. Miller was present on October 27 and advised the court that he had traveled from Phoenix, Arizona, to attend the hearing. After being so informed, the court excused Miller "from attending the hearing on November 10, 1980." Miller was not excused from appearing on December 10, and his counsel answered ready in his absence. An evidentiary hearing is not necessary where a petition's well-pleaded facts, assuming them to be true, are insufficient to warrant the relief requested. The issue of *laches* does not have to be decided after a trial on the merits but may properly be determined on a motion to dismiss if its applicability appears from the face of the complaint or by affidavits submitted with the motion. (See *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 768, 378 N.E.2d 588.) Finally, we find no error in the trial court's refusal to allow counsel a continuance so that he could submit an affidavit from Miller purporting to explain his delay in challenging the judgment. Counsel at no time made an offer of proof or any representation to the court that Miller's affidavit would contain any facts he had not already disclosed to the trial court in argument on the motion to dismiss. Since the court did not dispute the veracity of these facts but merely found them legally insufficient to justify the 21 month delay, no affidavits were necessary.

We believe the delay in the instant case was unreasonable. In *In re Miller* (1980), 84 Ill. App. 3d 199, 405 N.E.2d 25, the court found that a motion filed by the natural father on December 13, 1978 to vacate an order of guardianship entered on January 29, 1976 which the father apparently discovered in March in 1976 was barred by *laches*. Although, in *Miller*, there was a delay of approximately 33 months in filing the motion to vacate after the father had reason to believe that a judgment had been entered, whereas in the case at bar the delay was only 21 months, here the father had actual knowledge of the adoption judgment and yet failed to take any steps to challenge it for almost two years. In *Miller* the natural father did not have actual knowledge of the judgment but merely "knowledge of circumstances which would lead a reasonable person to make an inquiry." (*In re Miller* (1980), 84 Ill. App. 3d 199, 202.) We believe it is reasonable to expect and to require a parent to act more promptly in protecting his interests where he has actual knowledge of the earlier judgment. Because the factual circumstances are so dissimilar from

those present here, we find Miller's reliance on *Akers v. Christen* (1973), 11 Ill. App. 3d 369, 296 N.E.2d 774, unfounded.

■■ In dismissing Miller's petition, the trial court commented that a parent's interest in his child "is not a passing fancy, not something that should occur to a parent almost as an afterthought or wait until the circumstances become absolutely ripe or most propitious." Rather it is "something that must be attended to immediately; not just for your own concern, but for the concerns of the child." We agree with these comments and find that Miller's delay in attacking the adoption judgment was unreasonable.

To establish the defense of *laches* it is not sufficient for a party to show merely that there was unreasonable delay in bringing the action. He must also show that the delay materially prejudiced him. In the case of an adoption the potential of prejudice is greater because the delay affects not only the immediate parties but also the child.

■■ Here we note that the Pernells have lived with Tashyna as a family since 1975 when she was one year old. Tashyna's natural father has not seen her or communicated with her since January 1975, which was almost three years *before* the judgment of adoption was entered. In our opinion it would be extremely prejudicial to the stability of the family life Tashyna has enjoyed to permit the natural father to wait almost two years after he learned of the adoption to attack it. As one court has observed, "[p]robably in no other area of the law is the desirability of finality of determination greater than that which obtains in the field of adoption of children." (*Stewart v. Rouse* (Tex. Civ. App. 1971), 469 S.W.2d 615, 616, *aff'd in part and rev'd in part* (Tex. 1972), 475 S.W.2d 574.) To allow Miller to challenge the judgment of adoption 21 months after he discovered it and more than 5½ years after he last saw Tashyna would unquestionably disrupt the tranquility of a family unit which now involves not an infant but an eight-year-old child and her adoptive parents with whom she has lived during her critically significant formative years. We decline to do so.

For the foregoing reasons the order of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.