STEPHEN ECKBERG, Petitioner-Appellant, v. FRANK BENSO et al., Respondents-Appellees.

First District (1st Division)   No. 1—87—3493

Opinion filed April 10, 1989.

---

·Justice Quinlan participated in the decision of this opinion prior to his assignment the sixth division.

Kristen H. Fischer, of Champaign, for appellant.

James D. Stout, of Bridgeport, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Stephen Eckberg (petitioner) appeals the trial court's denial of his petition to vacate the adoption of his two sons by their mother, Linda Benso, and her husband, Frank Benso (respondents). Three issues are presented for our review: (1) whether petitioner should be precluded by *laches* from challenging the jurisdiction of the adoption court; (2) whether the trial court erred in finding that the adoption court had jurisdiction to enter the adoption decree; and (3) whether the trial court considered evidence inappropriate to the jurisdictional issue. We affirm.

Petitioner married Linda in Woodhall, Illinois, on April 20, 1968. During their marriage, two sons were born in Galesburg, Illinois: Brian Stephen Eckberg, May 19, 1968, and Brett Alvin Eckberg, April 16, 1970. In February 1974, petitioner and Linda were divorced, with custody of the children awarded to Linda and the issue of child support reserved. In 1983, respondents filed a petition for adoption of the Eckberg children in Cook County, Illinois, along with an affidavit stating that petitioner could not be found and that service was executed by publication in the Chicago Law Bulletin. Petitioner did not respond to the notice, and the adoption decree was entered in June 1983. Petitioner filed a petition to vacate the adoption decree in May 1986.

The evidence adduced at the hearing on this petition revealed the following. From the time of the divorce until the time petitioner filed this action, petitioner and respondents have resided at numerous locations. Petitioner moved shortly after the divorce in 1974 from the marital home in Macomb, Illinois, to Albuquerque, New Mexico, but returned to Macomb in early December 1974. In January 1975, petitioner moved to De Kalb, Illinois, where he worked various jobs and attended Northern Illinois University. In May 1981, petitioner relocated to Hermosa Beach, California, where he resides today.

After a brief stay with her parents following the divorce, Linda and the children moved in with Frank in Crickett Wood Green, Illinois. Thereafter, they moved to Good Hope, Illinois, where they resided until August 1975. At that time, Frank sold his restaurant business and they relocated to Glenwood Springs, Colorado. There, Linda and Frank were married on August 18, 1976, and the children began using the last name of "Benso." In 1977, the Bensos returned to Illinois to reside in Galesburg, Illinois. A year later, the Bensos moved to Ogden in Champaign County, Illinois, where they resided to the time of the filing of the instant action.

Respondents testified that at the time they filed their adoption petition, they were unaware of petitioner's whereabouts. In an attempt to locate petitioner, respondents unsuccessfully endeavored to contact petitioner's brother, a lawyer, by phoning the Illinois Bar Association and checking the Chicago telephone directory. They also sent a certified letter, which was returned to them as undeliverable, to petitioner's last known address.

Respondents did not attempt to contact petitioner's parents even though they knew that petitioner's natural mother was living somewhere around Nashville, Tennessee, that petitioner's father was a physician who at one time was associated with the hospital where Linda's mother had also worked, and that petitioner's father had resided in Galva, Illinois, in 1975. Respondents explained that they believed it would be fruitless to contact petitioner's father because petitioner had been estranged from him for several years, a conclusion they reached from petitioner's father's assertion on a 1975 visit that he was unaware of petitioner's whereabouts. Linda also stated that she did not have an address for petitioner's mother but only knew of her approximate whereabouts.

Petitioner and respondents presented conflicting testimony concerning petitioner's contacts with the Bensos since the 1974 divorce. Respondents testified that with the exception of one $100 payment and a meeting with Linda in a public park in 1974, petitioner has never offered any child support or communicated with respondents until petitioner instituted these proceedings.

Petitioner, on the other hand, recounted the following contacts he had with respondents. During his stay in Albuquerque shortly after the divorce, he remained in telephone contact with Linda. On his return to Macomb, petitioner met Linda in a Macomb park and Linda refused his request to see the children.

After he moved to De Kalb in January 1975, petitioner phoned Linda on several occasions until he discovered in May 1975 that the

phone had been disconnected. Linda telephoned him collect in the summer of 1975. From Linda's statement that she worked at a doctor's office, from the Glenwood Springs, Colorado, listing for the call on his phone bill, and from his inquiries at all the doctor's offices in Glenwood Springs, petitioner located Linda at the doctor's office where she worked. Although petitioner never learned where the Bensos resided in Colorado, he obtained their post office box number through the efforts of his roommate, Carmen Del Guidice. Petitioner produced postal receipts for two or three packages that he sent to the children at this address.

From the summer of 1975 through March 1977, petitioner and Linda had a number of telephone conversations concerning the children while Linda was at the doctor's office. Petitioner produced records documenting some of these calls, and petitioner's 1976-77 roommate testified that on several occasions petitioner indicated that he had recently spoken to his ex-wife. Petitioner's 1977-80 roommate also testified that in 1978 he received a phone call at their residence from a woman identifying herself as Linda, petitioner's ex-wife.

In mid- to late 1977, petitioner was informed upon phoning the doctor's office in Glenwood Springs that Linda had moved. From 1977-85, petitioner did not know the whereabouts of his children. Petitioner unsuccessfully sought information as to their whereabouts between 1977 and 1984 by contacting Linda's mother. He produced a Christmas card that Linda's mother had sent to petitioner's mother in 1980, stating that she was sorry she could not send pictures of the boys in deference to Linda's wishes.

In 1980, petitioner was informed by his brother, David Eckberg, that the children might be in the Champaign area. Petitioner unsuccessfully attempted to find a phone number from information. He stated that due to his financial limitations, he was unable to make any further efforts in locating his children.

While residing in California in August 1985, David again informed petitioner that the children might be in Champaign. Upon calling information, petitioner learned of an unlisted phone number for a "Frank Benso" in Ogden, Illinois. A couple of months later, petitioner contacted the school and learned that Brian and Brett were both enrolled. In October 1985, petitioner sent a letter to the children at school, but it was returned to him by the superintendent. Petitioner learned through counsel of the Benso's residence in Ogden, Illinois, in January 1986, and subsequently learned of the adoption in Cook County, Illinois. Petitioner filed the petition to vacate the decree three or four months later.

After the close of the above evidence, the trial court entered an order dismissing petitioner's petition. It found that service by publication in the underlying adoption proceeding was sufficient to confer jurisdiction over petitioner.

■■ The first issue presented for our review is whether petitioner is precluded by *laches* from challenging the jurisdiction of the adoption court. *Laches* is an equitable doctrine to be invoked in the discretion of the court to bar equitable claims. (*Bobin v. Tauber* (1976), 45 Ill. App. 3d 831, 360 N.E.2d 368.) Illinois courts have applied this doctrine to bar claims that a decree is void for defective service of process despite contrary arguments that such a jurisdictional claim may be brought at any time. (*James v. Frantz* (1961), 21 Ill. 2d 377, 383, 172 N.E.2d 795, 798; *Rodriguez v. Koschny* (1978), 57 Ill. App. 3d 355, 361, 373 N.E.2d 47, 52; *In re Adoption of Miller* (1982), 106 Ill. App. 3d 1025, 1030, 436 N.E.2d 611, 615.) It has been invoked under such circumstances to preclude the assertion of parental rights. *In re Adoption of Miller*, 106 Ill. App. 3d 1025, 436 N.E.2d 611; *In re Miller* (1980), 84 Ill. App. 3d 199, 405 N.E.2d 25; *Rodriguez*, 57 Ill. App. 3d 355, 373 N.E.2d 47.

Petitioner's reliance on *Home State Savings Association v. Powell* (1979), 73 Ill. App. 3d 915, 392 N.E.2d 598, as a decision which is contrary to the above holdings, is misplaced. *Home State Savings* addressed only the applicability of the due diligence and time requirements for seeking post-judgment relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) and did not address the appropriateness of the *laches* doctrine.

■■ Before turning to whether the *laches* doctrine should apply to the instant case, we note that the trial court did not directly address the *laches* issue or expressly base its dismissal on *laches* grounds. This did not preclude, though, the appellate court from addressing the *laches* issue in *In re Adoption of Miller* (1982), 106 Ill. App. 3d 1025, 436 N.E.2d 611. There, the court held that it was not confined to the precise reasons given by the trial court in its dismissal of the natural father's attack on the adoption judgment. It held that it could consider the adoptive parents' *laches* claim where the trial court did taken into account facts upon which a findings of *laches* could have been made. (*In re Adoption of Miller*, 106 Ill. App. 3d at 1031, 436 N.E.2d at 615.) Similar to *In re Adoption of Miller*, the trial court in the instant case heard extensive evidence concerning plaintiff's diligence in asserting his rights. Thus, we are likewise not precluded from addressing the *laches* issue.

■ No absolute right governs when *laches* should apply, and what facts will combine to constitute *laches* depends upon the circumstances of each case. (*Bobin*, 45 Ill. App. 3d 831, 360 N.E.2d 368; *People ex rel. Fleming v. Conlisk* (1973), 11 Ill. App. 3d 520, 299 N.E.2d 537.) Nonetheless, to assert the defense of *laches*, a party must show both that there was unreasonable delay in bringing the action and that the delay materially prejudiced him. *In re Adoption of Miller*, 106 Ill. App. 3d at 1032-33, 436 N.E.2d at 615; *Bobin*, 45 Ill. App. 3d at 827, 360 N.E.2d at 372; *Rodriguez*, 57 Ill. App. 3d at 362, 373 N.E.2d at 52.

■ With regard to the first *laches* requirement, for a court to find that petitioner unreasonably delayed bringing the action to assert his parental rights, the petitioner must have failed to seek prompt redress after having knowledge of the facts upon which his claim is based. (*Bobin*, 45 Ill. App. 3d 831, 360 N.E.2d 368; *Rodriguez*, 57 Ill. App. 3d 355, 373 N.E.2d 47; *Gill v. Gill* (1972), 8 Ill. App. 3d 625, 290 N.E.2d 897.) The petitioner, however, need not have actual knowledge of the specific facts upon which his claim is based if he fails to ascertain the truth through readily available channels and the circumstances are such that a reasonable person would make inquiry concerning these facts. *Rodriguez*, 57 Ill. App. 3d at 362, 373 N.E.2d at 52; *Bobin*, 45 Ill. App. 3d at 837, 369 N.E.2d at 373; *In re Miller*, 84 Ill. App. 3d at 202, 405 N.E.2d at 28.

Respondents argue here that petitioner should have realized that his parental rights might be in jeopardy during the 12 years before he actually learned of the adoption decree because he knew since 1974 of the Benso family unit and he knew of his demonstrated lack of interest in the children. Petitioner initially responds that the defense of *laches* should not be applied to him in the period prior to his discovery of the adoption because the separation between himself and the children was a result of respondents' calculated course of visitation denial and acts of concealment.

Petitioner's argument ignores that the concealment question was a disputed factual issue, the trial court's determination of which will not be set aside unless it is contrary to the manifest weight of the evidence.[1] (*In re Miller*, 84 Ill. App. 3d at 203, 405 N.E.2d at 28.) In our judgment, the trial court's finding on this issue is not against the manifest weight of the evidence.

---

[1]While the trial court here did not explicitly state that it found that respondents did not conceal their whereabouts, such a finding is implicit in the trial court's holding that respondents' publication notice was sufficient.

We do find persuasive, however, petitioner's alternative argument that he cannot be held to have unreasonably delayed asserting his parental rights where he did not know respondents' whereabouts from 1975 to 1985. We do not believe petitioner should be held obligated to make reasonable inquiry into his parental rights until he was aware of respondents' whereabouts in 1985. Only nine months elapsed from this point until petitioner asserted his parental rights by filing this petition in May 1986. The cases cited by respondents which have found an unreasonable delay have involved longer periods of time. (*In re Adoption of Miller*, 106 Ill. App. 3d 1025, 436 N.E.2d 611 (two years); *In re Miller*, 84 Ill. App. 3d 199, 405 N.E.2d 25 (three years); *Rodriguez*, 57 Ill. App. 3d 355, 373 N.E.2d 47 (nine years).) Thus, respondents have failed to meet the first requirement necessary to rely on the *laches* doctrine.

Additionally, respondents have not shown material prejudice resulting from petitioner's delay, the second *laches* requirement. Respondents argue that allowing petitioner to act now would intrude on a stable family relationship of 14 years, a relationship in which the adopted children have acquired a new status both in fact and law. Respondents, though, have not shown how the family relationship would be harmed here, where the children are now of majority age. Cases which have barred assertions of parental rights on *laches* grounds have involved children who were young minors at the time of the action, where the disruption of the continuity of the family relationship would have adversely affected their development. *In re Adoption of Miller*, 106 Ill. App. 3d 1025, 436 N.E.2d 611; *In re Miller*, 84 Ill. App. 3d 199, 405 N.E.2d 25; *Rodriguez*, 57 Ill. App. 3d 355, 373 N.E.2d 47.

We next address whether the trial court erred in finding that the adoption court had jurisdiction to enter the adoption decree. Petitioner contends that respondents did not produce sufficient evidence at his petition hearing to show that they made due inquiry into petitioner's whereabouts when they sought the adoption decree, as required for service of process by publication under section 2—206 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—206). Section 2—206 of the Illinois Code of Civil Procedure allows service by publication in actions affecting status within the jurisdiction of the court where a defendant cannot be found on "due inquiry" and his place of residence cannot be ascertained upon "diligent inquiry." Ill. Rev. Stat. 1985, ch. 110, par. 2—206.

At the time they sought the adoption decree, respondents were required only to file an affidavit stating due inquiry was made to

determine petitioner's whereabouts. (Ill. Rev. Stat. 1985, ch. 110, par. 2—206.) Upon petitioner's subsequent challenge of the affidavit, they were then required to produce evidence to that effect. (*First Federal Savings & Loan Association v. Brown* (1979), 74 Ill. App. 3d 901, 393 N.E.2d 574; *Bell Federal Savings & Loan Association v. Horton* (1978), 59 Ill. App. 3d 923, 376 N.E.2d 1029.) We hold that the record does not demonstrate that the trial court's determination that respondents established their due inquiry into petitioner's whereabouts was manifestly erroneous.

Respondents introduced evidence that they had not seen or heard from petitioner since 1974, that they did not know of petitioner's relocation to California in 1981, and that they attempted to locate him through the only avenue they believed open to them—through petitioner's brother, who they believed was practicing law in the vicinity of Chicago. While petitioner argues that respondents should have attempted to locate petitioner's parents, respondents testified that they believed petitioner's relationship with his father and stepmother had been severed, and Linda testified that she only knew the approximate whereabouts of petitioner's natural mother. The trial court also considered the conflicting testimony as to whether respondents concealed their whereabouts from petitioner. We will not disturb its judgment on matters relating to the credibility of the witnesses.

■ Finally, we consider petitioner's contention that the trial court considered evidence inappropriate to the jurisdictional issue. Petitioner insists that the trial court improperly considered evidence concerning the best interests of the children and concerning petitioner's fitness as a parent. A review of the record reveals that the trial court was aware of the single issue before it. It was noted throughout the proceeding that the sole issue in the hearing was whether the adoption court had personal jurisdiction. The court also commented to this effect at the close of the hearing: "[W]e are dealing here with one issue and that is the issue of whether or not Mr. Eckberg was afforded proper notice to warrant his default in the adoption proceedings."

Nevertheless, petitioner argues that while the court may have seemingly understood the limited issue presented, it let the above concerns cloud the issue, thereby placing an improper burden of proof upon petitioner. Petitioner directs us to a number of the trial court's statements, including the court's comments regarding petitioner's lack of interest in supporting the children, the long period of time between the divorce and this action, and the minimal effort expended by petitioner to locate his children. As respondents point out, these comments and the related evidence were relevant to the issue of whether

petitioner unreasonably delayed asserting his rights to be barred by *laches*, as well as to the issue of whether due diligence was exercised by respondents to discover petitioner's whereabouts. Thus, we find that the record does not establish that the trial court considered inappropriate evidence or let concerns irrelevant to the proceeding cloud its determination of the jurisdictional issue.

For the foregoing reasons, the trial court's denial of the petition to vacate the adoption decree is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.