# Illinois Official Reports

## Appellate Court

---

*West Suburban Bank v. Advantage Financial Partners, LLC*,
**2014 IL App (2d) 131146**

---

| | |
|---|---|
| Appellate Court Caption | WEST SUBURBAN BANK, Plaintiff-Appellee, v. ADVANTAGE FINANCIAL PARTNERS, LLC, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-1146 |
| Filed<br>Rehearing denied | November 17, 2014<br>December 31, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In mortgage foreclosure proceedings where plaintiff bank obtained default judgments on multiple properties after defendant mortgagor was served with process by employees of a private detective agency appointed and acting as a private process server but not properly "certified" under the Private Detective Act, and defendant filed petitions under section 2-1401 of the Code of Civil Procedure to set aside the judgments for lack of personal jurisdiction, the appellate court reversed the order dismissing the petitions and remanded the cause for further proceedings, since the requirements of the statute were not met, regardless of the fact that defendant was unable to show that it was prejudiced by the defective service. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08-CH-4874; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Stephen D. Richek, of Leading Legal LLC, and Stewart T. Kusper and Paul C. Mallon, Jr., both of Kusper Law Group, Ltd., both of Chicago, for appellant.

Robert G. Black, of Law Offices of Robert G. Black, of Naperville, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justice Jorgensen concurred in the judgment and opinion.
Justice Birkett specially concurred, with opinion.

## OPINION

¶ 1        The plaintiff, West Suburban Bank (WSB), issued a loan to the defendant, Advantage Financial Partners, LLC, and Advantage collateralized that loan with the mortgages of 23 properties in Cook, Du Page, and other counties. Advantage defaulted on the loan, and WSB filed foreclosure actions against the mortgaged properties. In almost all of the actions, a private detective agency called MPSI, Inc., was appointed and acted as a special process server. After WSB obtained judgments and the properties were sold, Advantage filed petitions under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)) to set aside the judgments for lack of personal jurisdiction. Advantage alleged that service was defective, because MPSI was not properly certified when its employees served process in the lawsuits. The trial court dismissed the petitions and Advantage appealed. We reverse and remand.

¶ 2                                    BACKGROUND

¶ 3        In 2005, WSB issued a $10 million revolving-credit promissory note to Advantage, secured by multiple mortgages on properties owned by Advantage in several counties. Advantage defaulted on the note in 2008.

¶ 4        Beginning in December 2008, WSB filed 23 foreclosure actions against Advantage on the properties that secured the promissory note. In all but one of these cases,[1] WSB sought and obtained orders appointing MPSI, Inc., license No. 117-000774, as special process server, and MPSI employees served process upon Advantage. WSB subsequently obtained default judgments of foreclosure in all of the cases. In 2009, the properties were sold to WSB at sheriff's sales and the sales were confirmed by the court. WSB later sold the properties to third parties.

¶ 5        About four years later, in April 2013, Advantage filed section 2-1401 petitions for relief from judgment in all 23 cases. As relevant here, the petitions alleged that service was defective because MPSI was not certified to act as a process server at the time its employees served the

_____
[1]In Will County case No. 08-CH-5698, a different special process server was appointed.

summonses in the cases. Accordingly, the trial courts had never acquired personal jurisdiction over Advantage, and the orders subsequently entered in the cases were void. (The section 2-1401 petitions also alleged other defects in the service, but they are not relevant here in light of our disposition.)

¶ 6 WSB sought consolidation as to all of the cases and the supreme court granted it as to all but one case, a Cook County case. The 22 remaining cases were consolidated into the present case, No. 08-CH-4874, which proceeded before the circuit court of Du Page County. WSB then filed a motion to dismiss the section 2-1401 petitions.

¶ 7 During the briefing of the motion to dismiss, multiple exhibits were presented that established the following facts, all of which appear to be undisputed. MPSI was first licensed by the Department of Financial and Professional Regulation (Department) in 1994 under a different name; the name was changed to MPSI in 2000. The agency was founded by Alfred J. Chiappano, a licensed private detective himself. Chiappano was identified in government records as the licensed "private detective in charge" of MPSI.

¶ 8 On August 31, 2008, MPSI's license expired. It has never been renewed. Later that year, in November 2008, MPSI was involuntarily dissolved by the Secretary of State. Thus, when MPSI employees served process on Advantage in the cases herein, MPSI was neither licensed nor an Illinois corporation. (After Advantage filed its section 2-1401 petitions, MPSI sought and received reinstatement as an Illinois corporation. However, it never renewed its private detective agency license.) Chiappano's individual license remained valid at all times.

¶ 9 On September 24, 2013, the trial court heard oral argument and granted WSB's motion to dismiss Advantage's section 2-1401 petitions in 21 cases,[2] reasoning that, even though MPSI itself was not licensed at the time of service, its employees who served the summonses were licensed and thus there was no defect in service. It also stated that allowing the section 2-1401 petitions to proceed more than five years after the properties were sold would be "inequitable." Advantage appealed.

¶ 10                                                     ANALYSIS

¶ 11 On appeal, Advantage raises several arguments as to why service was defective. However, as we find its first argument dispositive, we do not reach the others.

¶ 12 Advantage argues that, because MPSI was not a licensed private detective agency when its employees served process, service was defective. We agree. In explaining why, we begin with the plain language of the statute that governs who may serve process in Illinois, section 2-202 of the Code. 735 ILCS 5/2-202 (West 2012).

¶ 13 Subsection (a) of that statute provides that "[p]rocess shall be served by a sheriff" or, in counties with populations of less than 2 million, "process may be served, without special appointment, by a person who is licensed or registered as a private detective under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 [(Private Detective Act) (225 ILCS 447/5-5 *et seq.* (West 2012))] or by a registered employee

---

[2]The order did not apply to the Cook County case that was not consolidated with the others or to the Will County case involving a different process server. Accordingly, this appeal concerns the remaining 21 cases.

- 3 -

of a private detective agency *certified under that Act as provided in Section (a-5)*." (Emphasis added.) 735 ILCS 5/2-202(a) (West 2012).

¶ 14    Subsection (a-5) governs the service of process through special process servers appointed by the court, and it provides:

> "Upon motion and in its discretion, the court may appoint as a special process server a private detective agency *certified under the Private Detective *** Act ***.* Under the appointment, any employee of the private detective agency who is registered under that Act may serve the process. The motion and the order of appointment must contain the number of the certificate issued to the private detective agency by the Department ***. A private detective or private detective agency shall send, one time only, a copy of his, her, or its individual private detective license or private detective agency certificate to the county sheriff in each county in which the detective or detective agency or his, her, or its employees serve process, regardless of size of the population of the county. As long as the license or certificate is valid and meets the requirements of the Department ***, a new copy of the current license or certificate need not be sent to the sheriff." (Emphasis added.) 735 ILCS 5/2-202(a-5) (West 2012).

The provision also defines who is a "registered employee" of a private detective agency and requires the agency to maintain a list of such employees and to provide the list under certain circumstances. *Id.*

¶ 15    Of the 23 foreclosure cases filed by WSB, the great majority (15) were in Cook County, which has a population of more than 2 million. In those cases, WSB was required to rely on the sheriff's office to serve summons or else seek appointment of a special process server. As noted above, in 22 of the cases, WSB elected to seek the appointment of MPSI as a special process server under section 2-202(a-5) of the Code. The question before us is whether the resulting appointments of MPSI were valid under section 2-202(a-5), given the undisputed fact that MPSI's private detective agency license expired prior to those appointments and prior to the service of process.

¶ 16    In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000). The best indicator of the legislature's intent is the plain language of the statute. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002). "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007).

¶ 17    In this case, the statute's language is clear: a court may appoint, as a special process server, only a private detective agency that is "certified" under the Private Detective Act (225 ILCS 447/5-5 *et seq.* (West 2012)). "Certified" is used together with "licensed" in section 2-202(a-5) to mean a private detective agency that has been duly licensed under the Private Detective Act, with the result that it has been issued a certificate by the Department. See 735 ILCS 5/2-202(a-5) (West 2012); 225 ILCS 447/10-25 (West 2012). The importance of the certification requirement is reflected in the additional provisions of section 2-205(a-5), which specify that the court order appointing the special process server must contain the private

detective agency's certificate (license) number and that the agency must place a copy of the certificate on file with the local sheriff's office.

¶ 18        As MPSI's license had expired before WSB moved to appoint it as special process server, its certificate was invalid. It therefore was not eligible for appointment under section 2-202(a-5) of the Code. In reaching this conclusion, we note that the Private Detective Act, which was enacted to protect the public (225 ILCS 447/5-15 (West 2012)), expressly states that it is unlawful for any person, firm, or corporation to act as a licensed agency unless it is in fact licensed by the Department (225 ILCS 447/10-5 (West 2012)). Accordingly, MPSI could not legally act as a licensed private detective agency at the time of its appointment as a special process server, and any service by MPSI's employees upon Advantage was invalid. See *Gocheff v. Breeding*, 53 Ill. App. 3d 608, 609 (1977) (where person appointed as special process server was a party interested in the action and thus ineligible for such appointment, service was invalid).

¶ 19        WSB argues that MPSI's lack of certification does not invalidate the service, because Chiappano's license remained in good standing and the employees who served the summonses, Jason Flowers and Mary Jo Brooks, were "registered employees" under section 2-202(a-5)(1) with valid permanent employee registration cards. See 735 ILCS 5/2-202(a-5)(1) (West 2012). This argument ignores the fact that the entity appointed as the special process server was the private detective agency, MPSI, not Chiappano. Assuming that Flowers and Brooks were employees of MPSI, they could not legally serve process where MPSI's own appointment was invalid. *Id*. Even if Flowers and Brooks were viewed as Chiappano's employees, that would not render their service of process valid; a special process server may not "delegate" the service of process to one who was not named in the appointment. *ITT Thorp Corp. v. Hitesman*, 115 Ill. App. 3d 202, 206 (1983). Thus, MPSI could not "cure" the invalidity of its appointment by delegating the ability to serve process to Chiappano. We can find no support for WSB's contention that the employees of a defunct private detective agency that was ineligible to be appointed as a special process server could validly serve process on that agency's behalf.

¶ 20        WSB argues that MPSI's expired certification is a technical defect that should not result in a lack of personal jurisdiction. However, the weight of Illinois law is clearly to the contrary: defects in the service of process are neither "technical" nor insubstantial. In *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308-09 (1986), the supreme court explained:

> "It is essential to the validity of a judgment that the court have both jurisdiction of the subject matter of the litigation and jurisdiction over the parties. [Citations.] Absent a general appearance, personal jurisdiction can be acquired only by service of process *in the manner directed by statute.* *** A judgment rendered without service of process, *** where there has been neither a waiver of process nor a general appearance by the defendant, is void regardless of whether the defendant had actual knowledge of the proceedings. *** [A] judgment rendered by a court which fail[ed] to acquire jurisdiction of either the parties or the subject matter of the litigation may be attacked and vacated at any time or in any court, either directly or collaterally." (Emphasis added.)

Further, strict compliance with the statutes governing the service of process is required before a court will acquire personal jurisdiction over the person served. *Sarkissian v. Chicago Board*

*of Education*, 201 Ill. 2d 95, 109 (2002); *C.T.A.S.S. & U. Federal Credit Union v. Johnson*, 383 Ill. App. 3d 909, 912 (2008).

¶ 21    In *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 172 Ill. App. 3d 993, 998 (1988), this court held that, where a private detective was not authorized to serve process because he was not appointed as required by section 2-202 of the Code, the court lacked personal jurisdiction over the defendant and the default judgment obtained by the plaintiff was void. Similarly, in *C.T.A.S.S. & U.*, 383 Ill. App. 3d at 912, the reviewing court held that the default judgment was void for lack of personal jurisdiction where process was served before the order appointing the special process server was entered. In both cases, the reviewing courts vacated, as void, the default judgments previously entered. WSB attempts to distinguish these cases on the ground that they involved different defects in the service of process than occurred here, but it cannot explain why the operative legal principle should be any different. In light of this precedent, we reject WSB's argument that the defects in MPSI's service of process were insufficient to render the default judgments in these cases void.

¶ 22    WSB also raises a variety of other arguments against the conclusion that the court never acquired personal jurisdiction over Advantage, but all of them lack merit. For instance, WSB argues that an affidavit of service (such as the affidavits executed by MPSI's employees in the cases herein) is *prima facie* evidence of proper service of process, which may not be set aside unless impeached by clear and satisfactory evidence. *In re Jafree*, 93 Ill. 2d 450, 455 (1982). However, Advantage met that standard here: it presented clear and undisputed evidence (documentation of MPSI's unlicensed status at the time of its appointment as special process server and when it served the summonses) to rebut the presumption of valid service. Moreover, the presumption of valid service is an evidentiary presumption that is limited to the factual matters within the process server's personal knowledge. *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 172 (1983). As such, its applicability here is doubtful, as the issue is not a factual one relating to the manner of service, but rather is a legal one regarding the eligibility of the process server to serve process at all. *Cf. Gocheff*, 53 Ill. App. 3d at 609-10 (not applying the presumption of valid service where the issue was whether the process server was legally eligible to perform that task).

¶ 23    WSB also argues that Advantage had notice of the lawsuits even if it was not properly served, thus fulfilling the purpose behind the service of process. However, as our supreme court has stated, "A judgment rendered without service of process, *** where there has been neither a waiver of process nor a general appearance by the defendant, is void regardless of whether the defendant had actual knowledge of the proceedings." *Thill*, 113 Ill. 2d at 308. As for WSB's argument that Advantage waived its objection to personal jurisdiction through actions Advantage took after filing its section 2-1401 petitions, it lacks merit, being unsupported by either the record or legal authority. See *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 43 (actions taken after lodging objection to personal jurisdiction do not create a retroactive waiver of such objection).

¶ 24    WSB contends that the defect in service of process merely rendered the judgments voidable, not void, citing *Bell Federal Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 930-31 (1978), and *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 481 (1981). However, *Clemmons* concerns evidentiary issues related to a return of service and in no way holds that invalid service would render a judgment voidable rather than void. *Horton* involved the defendants' claim that the plaintiff had not made "due inquiry" into their location with "due

diligence" so as to justify service by publication. The reviewing court agreed with the defendants and thus found service by publication improper, rendering the default judgment void as to the defendants. *Horton*, 59 Ill. App. 3d at 930. The court's later comments regarding "void" and "voidable" defects in service were *dicta*, and we believe they were not well taken. As we have said, the proposition is well established that invalid service results in a judgment that is void for lack of personal jurisdiction. *Sarkissian*, 201 Ill. 2d at 109; *Thill*, 113 Ill. 2d at 308-09; see also *Pennoyer v. Neff*, 95 U.S. 714, 732 (1877) ("if the court has no jurisdiction over the person *** and, consequently, no authority to pass [judgment] upon his personal rights and obligations[,] *** the whole proceeding *** is *coram non judice* and void"). There is no similar support for the idea that lack of personal jurisdiction merely renders a judgment voidable.

¶ 25        WSB also argues that Advantage could not use section 2-1401 petitions to assert a lack of personal jurisdiction once the sales of the properties had been confirmed, because, after that point, a foreclosure judgment may be attacked only through a motion pursuant to section 15-1508(b) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1508(b) (West 2012)). In support of this argument, WSB cites *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 27, in which the supreme court held that a mortgagor could challenge a judgment of foreclosure by filing a motion under section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2010)) only until the mortgagee moved to confirm the sale; after that point, the movant must proceed under section 15-1508(b) (735 ILCS 5/15-1508(b) (West 2010)). However, neither *McCluskey* nor the other cases cited by WSB involved default judgments that were void for lack of personal jurisdiction, and thus they do not speak to the situation here. Rather, the cases herein are governed by the supreme court's decision in *Sarkissian*, in which it held that a petition for relief from judgment under section 2-1401 was a proper vehicle by which to challenge a judgment as void for lack of personal jurisdiction. *Sarkissian*, 201 Ill. 2d at 104. Further, as the First District of the Appellate Court has aptly noted:

> "A judgment entered without jurisdiction over the parties is void *ab initio* and lacks legal effect. *Village of Algonquin v. Lowe*, 2011 IL App (2d) 100603, ¶ 24; *Bell Federal Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 928-29 (1978). Even if the legislature had the power to make a void judgment effective, nothing in section 15-1509 [of the Mortgage Foreclosure Law] indicates that the legislature sought to make foreclosure judgments take effect and deprive owners of their properties when the trial court lacked personal jurisdiction over the owners." *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 15.

Accordingly, the reviewing court held that the strictures governing the setting aside of foreclosure judgments apply only to "valid judgments entered with jurisdiction over the parties and the subject matter." *Id*.; see also *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 19. We agree with this analysis. Accordingly, we reject the argument that Advantage was required to bring its jurisdictional challenge under the Mortgage Foreclosure Law rather than section 2-1401.

¶ 26        WSB's final argument is that Advantage's jurisdictional challenge is barred by *laches*. This is a curious argument, as the principle that a void judgment may be attacked at any time is firmly entrenched in Illinois law. See, *e.g.*, *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17 ("A judgment entered by a court without jurisdiction over the parties is void and may be challenged at any time, either directly or collaterally."); *Sarkissian*, 201 Ill. 2d at

103 (same); *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989) (same); *Haywood v. Collins*, 60 Ill. 328, 337 (1871) (where landowner was not properly served, the court lacked personal jurisdiction over him and the judgment taking his property was void and could be collaterally attacked, despite the fact that the property had since been sold to others). Nevertheless, WSB is correct that, in some circumstances, *laches* have been held to interpose a limit on when a void judgment may be collaterally attacked. See, *e.g.*, *James v. Frantz*, 21 Ill. 2d 377, 383 (1961); *Eckberg v. Benso*, 182 Ill. App. 3d 126, 131-32 (1989); *In re Adoption of Miller*, 106 Ill. App. 3d 1025, 1030 (1982); *Rodriguez v. Koschny*, 57 Ill. App. 3d 355, 361 (1978). Several of these cases involved challenges to adoptions, brought many years later, in which the potential harm in undoing the earlier judgment was of particular concern. See *Koschny*, 57 Ill. App. 3d at 361 (noting the use in other states of *laches* to bar even jurisdictional challenges to adoptions and commenting that the doctrine of *laches* is "related in principle and in essential purpose to the special statute of limitation governing attacks on adoption decrees").[3]  However, we need not resolve either the continuing validity of this line of cases or its application in this nonadoption setting, because WSB has not established the necessary elements for the application of *laches*.

¶ 27    "[T]o assert the defense of *laches*, a party must show both that there was unreasonable delay in bringing the action and that the delay materially prejudiced him." *Eckberg*, 182 Ill. App. 3d at 132. Here, WSB has made no showing of material prejudice. Rather, both in the trial court and on appeal, WSB has merely asserted that its prejudice is "evident" from the record. This bald assertion is insufficient. See *Harper v. City Mutual Insurance Co.*, 67 Ill. App. 3d 694, 699 (1978) (evidence of prejudice is necessary to support the application of *laches*). Moreover, to the extent that WSB seeks to rely on the possible prejudice to someone other than itself (because the properties have been sold to third parties), we reject its argument. Section 2-1401(e) of the Code provides that where, as here, the underlying judgment is void but the lack of jurisdiction did not affirmatively appear in the record when judgment was entered, the subsequent vacating of the judgment does not affect any "right, title or interest" in any real property acquired by third parties. 735 ILCS 5/2-1401(e) (West 2012). Further, Advantage has stated that it does not seek return of the properties. Accordingly, WSB has not shown that the defense of *laches* should be applied here.

¶ 28                                    CONCLUSION
¶ 29    We are mindful of the concerns raised by Justice Birkett in his excellent special concurrence about the effect of our decision today, and indeed share many of them. However, the judicial principles we follow have been embedded in Illinois law for over a century. Those

---

[3]Courts in several states have recently addressed the issue of the extent to which the doctrine of *laches* can or should be applied to bar collateral attacks on judgments that are void for lack of personal jurisdiction. See, *e.g.*, *In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012); *County of San Diego v. Gorham*, 113 Cal. Rptr. 3d 147, 159 (Cal. Ct. App. 2010); *M&P Management, L.P. v. Williams*, 937 A.2d 398, 402 (Pa. 2007) (Saylor, J., concurring in part and dissenting in part, joined by Eakin, J.) (discussing the problem of balancing the interests of finality against those of validity); *Edwards v. Allen*, 216 S.W.3d 278, 289-92 (Tenn. 2007); *Estate of Hutchins v. Fargo*, 72 P.3d 638, 642 (Or. Ct. App. 2003); *Raymond v. Raymond*, 36 S.W.3d 733, 738-39 (Ark. 2001); *Berlin v. Sordillo*, 578 N.Y.S.2d 617, 619 (N.Y. App. Div. 1992). The Tennessee Supreme Court's decision in *Edwards* is particularly valuable, tracing the constitutional and public policy considerations involved in the issue.

principles go beyond the protection against deprivation of liberty and property afforded by the due process clause (which simply requires notice and an opportunity to be heard), expressing the intent of the legislature that no one should be haled into court unless the requirements for service of process have been strictly complied with. Here, the applicable statute requires that a private detective agency be properly licensed before it may act as a special process server. As this requirement was not met, the service did not comply with the statute.

¶ 30    For all of the foregoing reasons, the order of the circuit court of Du Page County dismissing Advantage's section 2-1401 petitions is reversed, and the cause is remanded for further proceedings.

¶ 31    Reversed and remanded.

¶ 32    JUSTICE BIRKETT, specially concurring.

¶ 33    I invite the reader to step back and set aside, for a moment, the procedural niceties in play here and consider this case with an intuitive sense of justice. I venture that few would find this result at all palatable. Advantage has received an undeserved procedural windfall. Never has Advantage disputed that a summons and complaint in each of these lawsuits was served on its registered agent, Steven Rotunno, or his employee at Rotunno's registered place of business. Never has Advantage denied having actual knowledge of these lawsuits in time to appear and defend. Nor has Advantage ever offered an explanation for its failure to appear and answer, which led in 2009 to 23 default judgments, all but 2 of which are at issue in this appeal. Advantage did not appear in these cases until April 2013, and then to challenge the judgments on a ground that we accept today: MPSI's license from the Department had expired on August 31, 2008, four months before it began serving Advantage with process in these cases. Advantage does not, and cannot, claim that it was prejudiced by MPSI's lack of a license when it served Advantage.

¶ 34    Our decision today impacts more than 20 individual cases, but the legal principle we enforce today will impact countless more.

¶ 35    Inevitably, wherever the rule of law governs, technicalities will decide cases. Where the law is clear, judges are to apply it however inconsequential appear the distinctions on which the decision rests and however jarring its consequences. Today's result is dictated, I acknowledge, by statute and case law. Section 2-202 contains an apparently exceptionless requirement that the private detective agency be licensed at the time of service. I know of no supreme court case interpreting the licensure requirement of section 2-202, but *Sarkissian*'s pronouncement that "strict compliance with statutes governing service of process on public entities is required" (*Sarkissian*, 201 Ill. 2d at 109) appears in principle to apply also to requirements for service on private corporations, including the licensure mandate of section 2-202.

¶ 36    I would hope, however, that today's result would give pause to those who have the authority to forestall such outcomes in the future. Perhaps our supreme court will distinguish *Sarkissian* from facts such as these and find some flexibility in section 2-202's licensure requirement for cases in which the defendant can demonstrate no prejudice from the licensure lapse or defect. Notably, in *Sarkissian*, the court held that an agent authorized by section 2-211 of the Code (Ill. Rev. Stat. 1987, ch. 110, ¶ 2-211 (now 735 ILCS 5/2-211 (West 2012))) to

receive service of process on behalf of a public corporation can delegate that authority even though section 2-211 has no provision for such delegation. See *Sarkissian*, 201 Ill. 2d at 112. Perhaps the court will similarly find in section 2-202 a concept of substantial compliance. There is, after all, a "broad overall policy goal of resolving cases on the merits rather than on technicalities" (*Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 352 (2007)). The Code itself dictates that it "shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." 735 ILCS 5/1-106 (West 2012). Regarding the Civil Practice Act (Act) specifically (735 ILCS 5/2-101 *et seq.* (West 2012)), courts have said that the Act's "overall philosophy of liberal construction *** precludes the determination of rights of litigants upon the technicalities of pleading and procedure when such rights may, within the spirit and letter of the Act, be adjudicated on their merits." *McMillen v. Rydbom*, 56 Ill. App. 2d 14, 29 (1965).

¶ 37 There are several states whose judicial decisions have adopted a standard of substantial compliance with codified service-of-process requirements. See, *e.g.*, *White Oak Manor, Inc. v. Lexington Insurance Co.*, 753 S.E.2d 537, 542 (S.C. 2014) ("The Court has never required exacting compliance with the rules to effect service of process, but instead looks to whether the plaintiff substantially complied with the rules such that the court has personal jurisdiction over the defendant and the defendant has notice of the proceedings."); *Graff v. Kelly*, 814 P.2d 489, 495 (Okla. 1991) (holding "that the Oklahoma Pleading Code requires substantial compliance in order for the trial court to have jurisdiction over the person of the defendant"); *MJS Enterprises, Inc. v. Superior Court*, 200 Cal. Rptr. 286, 288 (Cal. Ct. App. 1984) ("Notice of the litigation does not confer personal jurisdiction absent substantial compliance with the statutory requirements for service of summons.").

¶ 38 Alternatively, perhaps our legislature will consider allowing for substantial compliance with statutory service-of-process requirements. Kansas, for instance, has codified the following "saving" provision for service of process:

> "Substantial compliance with any method of serving process effects valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court that might affect the party or the party's status or property." Kan. Stat. Ann. § 60-204 (2010).

¶ 39 I reluctantly concur, with the hope that today's decision brings about changes that prevent substantive rights from being swallowed by procedural hurdles where, as here, the party claiming defective service of process can demonstrate absolutely no prejudice from the defect.