2022 IL App (1st) 200965-U

THIRD DIVISION
March 31, 2022

No. 1-20-0965

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| WEST SUBURBAN BANK, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County |
| | ) | |
| ADVANTAGE FINANCIAL PARTNERS, LLC, and | ) | 08 CH 46485 |
| UNKNOWN OWNERS AND NON-RECORD | ) | |
| CLAIMANTS, | ) | Honorable |
| | ) | Moshe Jacobius, |
| Defendants, | ) | Judge Presiding |
| | ) | |
| (Advantage Financial Partners, LLC, | ) | |
| Defendant-Appellant) | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Gordon and Justice McBride concurred in the judgment.

### ORDER

¶ 1    *Held*: Affirmed. Petition was properly dismissed based on *res judicata*.

¶ 2    This long and sprawling controversy, spawning five appellate decisions over two different judicial districts, in large part comes down to a single mistake made by the Cook County sheriff in recording a winning credit bid on a judicial sale after a foreclosure. The credit

bid—effectively the sale of the property to the foreclosing bank—was in the amount of $125,000 but was recorded by the sheriff as being in the amount of $5 million.

¶ 3    Much of the litigation has centered around the lending bank's attempt to retroactively and belatedly fix that massive error and the borrower's attempt to benefit from it. Unfortunately for the borrower—the plaintiff here—in one of these suits, the court conclusively resolved the issue of whether that sale should be credited at $5 million, deciding that it should *not* be so credited. The circuit court here relied on that prior judgment to dismiss this current action as a "textbook example" of *res judicata*. We agree and affirm.

¶ 4                                        BACKGROUND

¶ 5    We recite only the facts necessary to understand this decision, as the case has a storied past with this court. See *West Suburban Bank v. Advantage Financial Partners, LLC*, 2014 IL App (2d) 131146; *West Suburban Bank v. Advantage Financial Partners, LLC*, 2015 IL App (1st) 142110-U; *West Suburban Bank v. Advantage Financial Partners, LLC*, 2019 IL App (1st) 170831-U; *West Suburban Bank v. Advantage Financial Partners, LLC*, 2020 IL App (2d) 190125-U; see also *West Suburban Bank v. Advantage Financial Partners, LLC*, Appeal No. 1-17-0511 (dismissed for want of prosecution).

¶ 6                                    I. Initial Foreclosure Actions

¶ 7    In August 2005, Plaintiff, Advantage Financial Partners, LLC (AFP), took out a $10 million line of credit from defendant West Suburban Bank (WSB), secured by 25 different properties. In June 2008, AFP defaulted on the WSB loan, at the time owing $5.9 million. WSB foreclosed on all 25 properties.

¶ 8    From 2008 to 2010, the initial foreclosure actions took place over several counties— Kane, DuPage, Will, along with the one action in Cook County. In each action, WSB purported

to serve AFP with process, WSB obtained default judgments, and the matters proceeded to judicial sale. Some properties were sold to third-party cash buyers, others to WSB, the foreclosing party, on what is called a "credit bid."

¶ 9    The sole property located in Cook County was in Palatine, on Quentin Road, which we will refer to as the "Quentin Road Property," as does WSB. The foreclosure action on this property was filed on December 12, 2008. After a default judgment was entered, the property was sold on September 9, 2009. The Quentin Road Property had been appraised at $145,000; WSB has always claimed that it put in a credit bid on that property in the amount of $125,000. But when the credit bid was certified by the sheriff, the sheriff certified not the amount of $125,000, but rather $*5 million* dollars. Though WSB listed its credit bid at $125,000 in its motion to confirm the judicial sale, it failed to notice that the certificate of sale attached to the motion listed WSB's credit bid at the far higher value.

¶ 10    The circuit court granted the motion, confirming the $5 million credit bid and finding that a $936,532.02 *in rem* deficiency remained on the note. (Recall that $5.9 million was owed on the note before the various foreclosure proceedings began.)

¶ 11    Years passed, without WSB noticing this error.

¶ 12                II. AFP Challenges Non-Cook County Foreclosure Actions

¶ 13    Three years later, AFP appeared for the first time in 21 of the 24 non-Cook County foreclosure actions and moved, under section 2-1401 of the Code of Civil Procedure, to vacate those foreclosure judgments and sales. See 735 ILCS 5/2-1401 (West 2012). The basis for every one of the motions to vacate was the same—a defect in personal service, because the process server's license had expired, resulting in the absence of personal jurisdiction, rendering each of those judgments void. (For obvious reasons, AFP made no attempt to challenge the foreclosure

of the Quentin Road Property, with its apparent $5 million credit bid, even though it involved the same process server.)

¶ 14    The Illinois Supreme Court consolidated these 21 non-Cook County foreclosure actions in the circuit court of DuPage County. The circuit court dismissed all of AFP's section 2-1401 petitions, but the Second District Appellate Court reversed, agreeing with AFP that service was technically improper and thus personal jurisdiction lacking. See *West Suburban Bank v. Advantage Financial Partners, LLC*, 2014 IL App (2d) 131146, ¶ 24. Again, to be clear, the Cook County foreclosure action, involving the Quentin Road Property, was not the subject of one of AFP's section 2-1401 petitions and was not affected by the Second District's ruling.

¶ 15    We should also note that, while the foreclosure judgments themselves were vacated, the judicial sales were not. Because the defect in service could not be detected from the face of the summonses, the Second District held that the foreclosure sales themselves could not be unwound under the Illinois Mortgage Foreclosure Law. *Id.* ¶ 27. This fact will become relevant later.

¶ 16                III. WSB Challenges the Quentin Road Foreclosure

¶ 17    Right around this same time, apparently now realizing the egregious error contained in the certificate of sale regarding the Quentin Road Property, WSB filed a motion in the circuit court of Cook County to amend the confirmation of sale of the Quentin Road Property *nunc pro tunc* to reflect a credit bid of $125,000. The circuit court of Cook County rejected this claim as untimely and as an improper use of a *nunc pro tunc* order.

¶ 18    This court affirmed on various grounds. See *West Suburban Bank v. Advantage Financial Partners, LLC*, 2015 IL App (1st) 142110-U, ¶ 40. We recognized, however, that the $5 million dollar bid amount was "likely incorrect." *Id.* ¶ 33.

¶ 19    In January 2015, WSB stole a page out of AFP's playbook, filing a section 2-1401 petition in the circuit court of Cook County to vacate the judgments of foreclosure and sale regarding the Quentin Road Property; in short, WSB tried to vacate its own judgment. The reason: because WSB used the same process server on the Quentin Road Property foreclosure action as in the 21 consolidated cases in DuPage County, WSB lacked personal jurisdiction over AFP in the Quentin Road foreclosure, just as the Second District held with regard to the 21 non-Cook County foreclosure actions. The circuit court denied this petition, and we affirmed, holding that the jurisdictional objection was not the plaintiff's to make—and if the defendant, AFP, wanted to waive a personal-jurisdiction objection, it was free to do so, even if it asserted that objection in the consolidated DuPage County cases. See *West Suburban Bank v. Advantage Financial Partners, LLC*, 2019 IL App (1st) 170831-U, ¶¶ 34-35.

¶ 20                    IV. AFP Attempts to Recover Moneys from WSB

¶ 21    The next litigation steps in this controversy involved multiple attempts by AFP, the defaulting party on the note, to recover money from WSB, the lender who was owed $5.9 million as a result of the default, which initially led to the many foreclosure actions.

¶ 22                    A. Motion in DuPage County Consolidated Cases

¶ 23    The first such action occurred in 2015, within the DuPage County consolidated cases. After the Second District Appellate Court held that service was technically improper in those 21 consolidated foreclosure cases, WSB moved to vacate those judgments, and the circuit court granted that motion. WSB then moved to voluntarily dismiss those actions, which the circuit court also granted. But then AFP sought to have those voluntary dismissals, themselves, vacated. Though it may seem odd that a party that had just successfully defeated 21 foreclosure actions would want to keep those proceedings open and pending, its reason was best described later by

the Second District: AFP "filed a motion in one of the consolidated cases arguing that, as a result of the $5 million proceeds in the [Quentin Foreclosure], AFP's debt to WSB had been satisfied." *West Suburban Bank*, 2020 IL App (2d) 190125-U, ¶ 10. AFP, in other words, was trying to erase its debt to WSB on the loan default by claiming that WSB received $5 million from the sale of the Quentin Road Property alone.

¶ 24 The circuit court denied that motion, "in part on the basis that the $5 million purchase price appeared to be an error." *Id*.; see also *West Suburban Bank*, 2015 IL App (1st) 142110-U, ¶¶ 37-38 (noting that AFP "sought a refund from plaintiff in the circuit court of DuPage County based on the erroneous $5 million sales price," but that "[t]he DuPage County court clearly saw through defendant's attempt to use the incorrect sales price to its advantage.").

¶ 25                                   B. Restitution Action in Cook County

¶ 26 This next litigation development in this history is of particular significance to this appeal. In 2016, AFP filed an action for restitution in the circuit court of Cook County to recover $3.486 million, an amount representing the proceeds that WSB collected from the judicial sales in the 21 cases, based on foreclosure actions now deemed void. The sum and substance of this claim was that an action for restitution would lie to recover moneys received from a void judgment—in this case, 21 of them.

¶ 27 WSB moved to dismiss on several grounds. Pertinent to this appeal, WSB argued that it was not, in fact, unjustly enriched. WSB acknowledged that the proceeds from these 21 judicial sales had to be credited to the debt AFP owed, but WSB argued that, even after that credit were accounted for, AFP still owed more than $4 million on the note.

¶ 28    AFP responded that WSB's math was wrong, because WSB was not factoring in the $5 million "sale" of the Quentin Road Property. That credit bid, said AFP, "satisfied a full $5 million of any debt that otherwise might have existed under the AFP Note."

¶ 29    The circuit court (Judge Brigid McGrath) was not moved by AFP's argument. In January 2017, the circuit court dismissed the restitution complaint on several grounds, one of which was that "[AFP] cannot state a cause of action for restitution because [it] still owes money under the note."

¶ 30    AFP filed a notice of appeal with this court. The case was assigned appeal number 1-17-0511. After 7 months of inactivity, this court dismissed the case for want of prosecution. AFP did not move to reconsider or have the appeal reinstated.

¶ 31                C. "Surplus" Action Filed in DuPage County Consolidated Case

¶ 32    AFP returned to DuPage County for its next attempt. As the Second District neatly summarized, "[a]fter the Restitution Action failed" in the circuit court of Cook County, "AFP decided to take another stab at seeking the purported surplus, this time attempting to proceed in *** the consolidated cases" in DuPage County. *West Suburban Bank*, 2020 IL App (2d) 190125-U, ¶ 14. Specifically, in July 2018, AFP filed a petition for turnover of surplus funds with the circuit court of DuPage County. *Id*. ¶ 15.

¶ 33    WSB opposed the petition on three grounds. First, it was an untimely postjudgment motion, as the consolidated cases had been dismissed years earlier. Second, it was barred by the law-of-the-case doctrine, as AFP had previously tried to convince the DuPage County judge that a "surplus" existed due to the $5 million credit bid on the Quentin Road Property, and the circuit court in DuPage had rejected that claim, not believing the accuracy of that purported credit bid (see *supra*, ¶¶ 23-24; *West Suburban Bank*, 2020 IL App (2d) 190125-U, ¶ 10). And third, *res*

*judicata* barred AFP's petition, as the circuit court of Cook County, in the 2016 restitution action, had rejected the claim of a $5 million credit toward AFP's debt, finding instead that AFP still owed on the note.

¶ 34 The circuit court agreed on all three grounds and dismissed the action. The circuit court in DuPage began with the issue it found most persuasive, that of *res judicata*, given the restitution action and final judgment from the circuit court of Cook County:

> "[T]he one that jumped out at me initially was the *res judicata*. And black letter law on *res judicata* or what the courts have said over and over again, the three elements for *res judicata*, there was a final judgment on the merits rendered by a court of competent jurisdiction, there was an identity of a cause of action, and there is an identity of the parties or their privies. We've got the identity of the parties or privies. We've got a court of competent jurisdiction. And then I think the argument [made by AFP in opposition] is that it's a different cause of action. ***
>
> Once *res judicata* is established, its bar extends to all matters that were offered to sustain or defeat the claim or demand, as well as to any and all other matters which may have or could have been offered for that purpose. The bar applies to what was actually decided and what could have been decided. It's *res judicata*. It's identity of issues.
>
> This issue that you're talking about, this surplus, clearly was part of that Cook County case that has been in the Appellate court, and the Appellate court has made its final decision by dismissing the appeal [for want of prosecution]. *** So I think that, number one, res judicata applies with respect to this."[1]

---

[1] This court may judicially notice the record from other proceedings, particularly other records in this court. See *Auto-Owners Insurance Co. v. Konow*, 2016 IL App (2d) 150860, ¶ 7.

¶ 35    The Second District Appellate Court affirmed, but it reached only one issue—that of timeliness and thus jurisdiction. The court agreed with WSB that "all proceedings in the trial court had concluded and the trial court's jurisdiction had lapsed long before AFP filed its surplus petition and motion to reopen." *West Suburban Bank*, 2020 IL App (2d) 190125-U, ¶ 25. Thus, "[t]he trial court correctly found that it lacked jurisdiction to hear the surplus petition." *Id*. ¶ 26.

¶ 36    Unfortunately for WSB, however, because jurisdiction was lacking, the court had no choice but to vacate the substantive rulings made by the circuit court. As the court explained, "when a court lacks jurisdiction its only course is to dismiss the case. [Citation.] Accordingly, we vacate the orders entered by the trial court (denying the motion to reopen and the motion to reconsider) and remand with directions for the trial court to dismiss the case." *Id*. ¶ 31.

¶ 37    So WSB's *res judicata* victory was short-lived. The appellate court ordered that ruling vacated, thus robbing it, as AFP is quick to note, of preclusive effect.

¶ 38                          D. The Action Under Appeal Here

¶ 39    Having failed (twice) to persuade the circuit court of DuPage County that it was owed back money in light of the $5 million credit bid on the Quentin Road Property, and having failed to convince Judge McGrath in the circuit court of Cook County that it no longer owed money on the note in light of that same $5 million credit bid, thus entitling AFP to restitution, AFP returned to the circuit court of Cook County in June 2020 and filed an action in the original foreclosure case in Cook County regarding the Quentin Road Property, seeking a surplus. The matter was heard before Judge Moshe Jacobius, whose final judgment is before us here on appeal.

¶ 40    Specifically, AFP filed a "Verified Petition for Turnover of Surplus Funds" under section 15-1512(d) of the Mortgage Foreclosure Law. See 735 ILCS 5/15-1512(d) (2018). AFP sought

9

an order "directing [WSB] to place $3,039,040.27, or other such amount as the Court finds to be surplus, with the Clerk of this Court, or alternatively, to distribute the surplus directly to [AFP]."

¶ 41    Attached to the petition was the September 2009 sheriff's report of sale, showing a purported $5 million dollar credit bid on the Quentin Road Property sale. The petition squarely alleged that "[t]he surplus results primarily from the sale of [the Quentin Road Property], and the sale was completed on September 2, 2009."

¶ 42    WSB opposed the petition on several grounds. For one, WSB claimed that AFP was trying to use a "clerical error" to manufacture a surplus. WSB claimed that WSB's multiple, failed attempts to collect the "surplus" barred its petition based on *res judicata* and the law-of-the-case doctrine. WSB also argued that Section 15-1512(d)'s plain language required the petition to be filed against *the Sheriff*, not WSB.

¶ 43    The court reviewed the submissions and entertained oral argument (though the argument was not transcribed). Ultimately, the circuit court found dismissal appropriate on all grounds raised by WSB. Among other things, the circuit court found this case to be a "textbook example" of *res judicata*, given the final judgment in the 2016 restitution action: "Judge McGrath's January 20, 2017 Order ruled *on these exact issues* resulting from the same facts." (Emphasis in original.)

¶ 44    This appeal followed.

¶ 45                            ANALYSIS

¶ 46    Before this court, WSB raises these same issues in support of affirmance, and AFP claims that none of these reasons are meritorious. We may affirm on any basis in the record. See *Taylor, Bean, & Whitaker Mortgage Corporation v. Cocrot*, 2018 IL App (1st) 170969, ¶ 60. We do so based on *res judicata*.

¶ 47    *Res judicata* may take the form of claim preclusion (known as "true" *res judicata*) or issue preclusion (sometimes called collateral estoppel). *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1161 (2005). These closely related doctrines serve the same purpose—to promote judicial economy and avoid subjecting parties to repetitious litigation. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 44 (claim preclusion); *Illinois Health Maintenance Organization Guaranty Association v. Department of Insurance*, 372 Ill. App. 3d 24, 35 (2007) (issue preclusion). Indeed, these doctrines are so interrelated that they sometimes, though not always, overlap. See *Smith Trust & Savings Bank v. Young*, 312 Ill. App. 3d 853, 858 (2000).

¶ 48    By ruling that "Judge McGrath's January 20, 2017 Order ruled *on these exact issues resulting from the same facts*" (emphasis in original), the circuit court here was invoking the issue-preclusion form of *res judicata*. Our review of this ruling is *de novo*. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010).

¶ 49    An issue is precluded if "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Id.*; see *Gumma v. White,* 216 Ill.2d 23, 38 (2005). "Finality" requires that the party had the opportunity to seek appellate review. *O'Donnell*, 239 Ill. 2d at 158-59. And the court must be satisfied that the party subject to estoppel or preclusion "had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding." *Talarico v. Dunlap*, 281 Ill. App. 3d 662, 665 (1996).

¶ 50    We have little trouble concluding, as did Judge Jacobius, that the question of the validity of the $5 million credit bid, raised below, is subject to issue preclusion. Judge McGrath, in the 2016 restitution action, rejected AFP's claim that it was entitled to restitution, among other

reasons, because AFP still owed money under the note. Judge McGrath could not have possibly reached that conclusion without first determining whether to credit the $5 million "sale" of the Quentin Road Property. And she obviously refused to credit it. There is simply no other way to interpret Judge McGrath's final judgment.

¶ 51    To put a finer point on it, we elaborate on the restitution action, briefly discussed above. The basis for the restitution claim was that WSB had collected approximately $3.5 million from the judicial sales of the non-Cook County foreclosures that had subsequently been vacated by the Second District's holding, based on lack of proper service. AFP was thus entitled to a return of those proceeds, it claimed, because the underlying judgments had been vacated.

¶ 52    One of WSB's bases for dismissing the restitution action was that, even after crediting the amount it recovered from foreclosure sales, "[AFP] still owes [WSB] more than $4,443,915.66." The math was relatively straightforward. In rough numbers, the debt, which had continued to grow with interest, was now at approximately $8 million (from its original $5.9 million); the judicial sales thus far had netted WSB about $3.5 million; and thus what remained to be collected on the note was about $4.5 million.

¶ 53    WSB laid out its calculations in an affidavit from one of its executives, attached to its motion to dismiss. Quite obviously, WSB did *not* include in its calculations a credit bid of $5 million on the sale of the Quentin Road Property.

¶ 54    In response to the motion to dismiss, AFP highlighted the $5 million credit bid attributed to the sale of the Quentin Road Property:

> "[I]t also is undisputed that the Quentin Final Judgment evidences that WSB
> requested and received confirmation of a bid at the foreclosure sale of $5 million.
> [Citation.] Thus, WSB's actions in the Quentin Foreclosure resulted in confirmation of a

successful bid that consequently satisfied a full $5 million of any debt that otherwise might have existed under the AFP Note ***. Whereas WSB contends without proper evidentiary support that it was 'still owed a debt' from AFP of some $4.5 million, WSB does so without even acknowledging the Quentin Foreclosure or Quentin Final Judgment [] that WSB knows exists and knows conclusively refute [*sic*] any such contention."

¶ 55    The circuit court, however, expressly found in its written final judgment that "[AFP] cannot state a cause of action for restitution because [it] still owes money under the note." There is simply no way Judge McGrath could have so found without first deciding that the $5 million credit bid associated with the Quentin Road Property was not worthy of inclusion in the calculation. Had the court given credence to that $5 million credit bid, the court would have had no choice to but to determine that a *surplus* existed, that AFP no longer owed any money on that note.

¶ 56    No doubt, we might have preferred a written transcript of the oral argument before Judge McGrath, but there is none. We would have preferred a more explicitly detailed written order, as well. Regardless, we cannot ignore the obvious here and pretend that Judge McGrath merely glossed over the issue of the validity of the $5 million credit bid.

¶ 57    That question would, in fact, have been impossible to ignore. This dispute over the $5 million credit bid was the only disputed calculation in that action. That credit bid easily dwarfed the sales of all the other properties combined. Most of the properties that were judicially sold in these foreclosure actions were purchased in the five figures or very low six figures; only two of them sold for more than $200,000, the highest one at $280,000, from our review of AFP's submission. The $5 million credit bid was clearly the elephant in the room.

¶ 58    It is beyond clear to us that AFP had a full and fair opportunity, and incentive aplenty, to litigate this issue before Judge McGrath. Likewise, AFP was afforded an opportunity to appeal. As noted, AFP filed a notice of appeal but did not prosecute it, leading this court, seven months after the notice of appeal was filed, to dismiss it for want of prosecution.

¶ 59    Nor, for that matter, was Judge McGrath the first judge to refuse to believe that the Quentin Road Property sold for a credit bid of $5 million. As noted earlier, in 2015, the circuit court of DuPage County refused to find that a surplus existed in AFP's favor. (See *supra*, ¶¶ 23-24.) AFP took the rather extraordinary step of asking to reopen those dismissed consolidated foreclosure actions so that it could argue that, "as a result of the $5 million proceeds in the [Quentin Road Property credit bid], AFP's debt to WSB had been satisfied." *West Suburban Bank*, 2020 IL App (2d) 190125-U, ¶ 10.

¶ 60    AFP, in other words, was trying to erase its debt to WSB on the loan default by claiming that WSB received $5 million from the sale of the Quentin Road Property alone. Again, the circuit court denied that motion "in part on the basis that the $5 million purchase price appeared to be an error." *Id.*; see also *West Suburban Bank*, 2015 IL App (1st) 142110-U, ¶¶ 37-38 (noting that AFP "sought a refund from plaintiff in the circuit court of DuPage County based on the erroneous $5 million sales price," but that "[t]he DuPage County court clearly saw through defendant's attempt to use the incorrect sales price to its advantage."). And we would note that AFP did not appeal that ruling, though of course it would have been free to do so.

¶ 61    In any event, that earlier 2015 DuPage County ruling aside, Judge McGrath's ruling in the Cook County restitution action in January 2017 was a final judgment on the merits, deciding an issue identical to the one raised by the petition before us, in which AFP was a party with the

14

full opportunity and incentive to litigate. We agree with Judge Jacobius that this matter presented a "textbook example" of *res judicata*.

¶ 62    And it is worth a reminder, at least, that we are not the first court to find that Judge McGrath's ruling in the restitution action was *res judicata* on the validity of the $5 million credit bid on the Quentin Property Road. As detailed above, the circuit court in DuPage County found the same to be true in 2018, when AFP returned to DuPage County and sought to reopen the consolidated foreclosure cases to file a petition for turnover of surplus funds, obviously based primarily on the $5 million credit bid. (See *supra*, ¶¶ 32-37.) The first words out of the circuit court's mouth in its oral ruling were *res judicata*, based on Judge McGrath's earlier judgment.

¶ 63    The only reason that did not end the matter right there, once and for all, is that the Second District agreed with the trial judge that the petition was time-barred, and thus jurisdiction was lacking; the appellate court thus had no choice but to vacate all the substantive rulings the trial judge had made, including its ruling on *res judicata*, and remand for nothing more than a dismissal of the action. See *West Suburban Bank*, 2020 IL App (2d) 190125-U, ¶¶ 25-26, 31.

¶ 64    That vacatur allowed AFP to narrowly escape final defeat, allowing AFP to return once again to the circuit court of Cook County for yet *another* attempt to assign credence to a $5 million credit bid—to yet again try to convince a court in equity that it should believe that, on a property appraised at $145,000, at a judicial sale at which WSB was the *only* bidder, WSB did not put up a credit bid of $125,000 as it claims but, rather, put up a credit bid of $5 million, over *34 times* the appraised amount.

¶ 65    AFP spends multiples pages in its brief praying for fairness and justice and equitable outcomes. There is nothing equitable about what AFP is attempting here. No doubt, WSB has made its share of mistakes. Hiring the wrong process server was one; by far the bigger one was

missing the error by the Sheriff, moving to confirm a judicial sale with an obviously incorrect credit bid, and then not noticing the error for several years. WSB has tried to rectify that mistake in vain, attempting to secure a *nunc pro tunc* order to correct the error and attempting to vacate its own foreclosure action based on lack of service; each time, for various reasons, the circuit court found that attempt inappropriate, and each time we affirmed. But we have never hinted that there was any validity to the notion that WSB would have truly made such a ridiculously inflated credit bid on the Quentin Road Property. Indeed, as detailed above, both the Second District and this court have noted our obvious skepticism more than once.

¶ 66    And it is nearly impossible to think that AFP believes that the $5 million credit bid was anything other than a mistake in recording. Yet AFP has bounced back and forth, from DuPage County to Cook County, back to DuPage and now again to Cook, in search of some way to profit—to the tune of over $3 million—from this mistake. We are hard-pressed to find AFP on the side of justice in this matter. For a party that defaulted on an outstanding line of credit of $5.9 million to try to turn a profit of over $3 million does not strike us as equitable.

¶ 67    In any event, Judge McGrath, if not a DuPage County judge years earlier, conclusively resolved this question in favor of WSB and against AFP. This petition was properly dismissed on the basis of issue preclusion. In light of that conclusion, we need not reach the other bases for dismissal.

¶ 68                                    CONCLUSION

¶ 69    The judgment of the circuit court is affirmed.

¶ 70    Affirmed.

16